**TEXAS KEYSTONE INCORPORATED, Petitioner**

v.

**PENNSYLVANIA DEPARTMENT OF CONSERVATION AND NATURAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 2, 2004.

Decided June 7, 2004.

---

13. For this reason we need not consider the Department's preliminary objection to Garber's service of the petition.

Gerald J. Stubenhofer, Jr., Pittsburgh, for petitioner.

Linda S. Lloyd, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge LEAVITT.

Texas Keystone Incorporated (TKI) has filed a Petition for Review in the Nature of a Complaint in Equity and Complaint for Declaratory Judgment against the Department of Conservation and Natural Resources (DCNR) pursuant to this Court's original jurisdiction. At issue is DCNR's recently adopted policy relating to its leases of state-owned forest lands for oil and gas production. DCNR has filed preliminary objections alleging, *inter alia,* that this Court lacks subject matter jurisdiction because TKI has failed to exhaust its administrative remedies. For the reasons set forth herein, TKI's petition is dismissed as premature insofar as it seeks relief with respect to permits it needs to drill natural gas wells in certain state forest lands it has leased and the remainder of the petition, asserting contractual claims, is transferred to the Board of Claims.

TKI is engaged in the business of oil and gas exploration in the Commonwealth of Pennsylvania. Pursuant to the Conservation and Natural Resources Act,[1] DCNR

---

1. Act of June 28, 1995, P.L. 89, 71 P.S. §§ 1340.101–1340.1103. The Conservation and Natural Resources Act established the DCNR as an administrative department with- in the executive branch of the government of Pennsylvania, 71 P.S. § 1340.301, and changed the name of the Department of Environmental Resources to Department of Envi-

is charged with the management and use of state-owned forest lands, including the leasing of such land for the exploration and production of oil and natural gas. In this capacity, DCNR has leased out in excess of 100,000 acres of land located in and around Sproul State Forest in Clinton and Centre Counties. Many of these leases have in turn been subject to "farmout agreements"[2] by which the leasehold rights were assigned to third parties with the full consent of DCNR. Equitable Production Company (Equitable), as both lessee and farmee, has assembled a number of leases in this area into a block, referred to by the parties as the Council Run Tract. Notably, these leases contain an express assignment clause, pursuant to which the leases have been passed from assignor to assignee, on numerous occasions since the making of the original lease.

Beginning in 2000, TKI expressed interest in acquiring Equitable's gas exploration rights in the Council Run Tract. On October 8, 2001, Stephen Perdue, a Regional Director for Equitable, telephoned a representative of DCNR's Bureau of Forestry and requested DCNR's guidelines on farmout agreements. By letter dated October 10, 2001, DCNR responded to Purdue's request. According to TKI's complaint in this action, Equitable and DCNR then came to an understanding and agreed upon a procedure with respect to the manner in which Equitable could sublease, i.e., "farmout," portions of the Council Run Tract to TKI. Petition for Review at 6. Thereafter, on June 20, 2002, TKI and Equitable entered into a farmout agreement requiring TKI to drill a specified number of gas wells by December 31, 2002.[3] TKI obtained performance bonds to cover its contractual obligations. Representatives from TKI and DCNR met on June 25, 2002 to discuss TKI's prospective operations on the Council Run Tract. Although formal approval by DCNR was still forthcoming, nothing transpired during

---

ronmental Protection (DEP). 71 P.S. § 1340.501. The DCNR is empowered to promulgate rules and regulations for the control, management, protection, utilization, development, occupancy and use of the lands and resources of State forests that are compatible with the purposes for which State forests are created, namely to provide a continuous supply of timber, lumber, wood and other forest products, to protect the watersheds, conserve the waters and regulate the flow of rivers and streams of Pennsylvania and to furnish opportunities for healthful recreation to the public. 71 P.S. § 1340.313(a), (c). DEP continues to exercise the same powers and perform the same duties and functions vested in and imposed upon the Department of Environmental Resources not otherwise amended or transferred by the Act to the DCNR. 71 P.S. § 1340.503(a). This would include the authority to issue permits for natural gas drilling operations in the Commonwealth.

2. A farmout agreement is an executory contract to assign operating and/or production rights for oil and gas wells, usually at specified locations upon completion of drilling obligations and the performance of any other covenants or conditions contained in the farmout agreement. A farmout agreement is typically employed where the owner of a lease is unable or unwilling to drill for oil or gas but is willing to transfer operating or production rights to an interested party. The transferor, or "farmor," of drilling rights refers to its agreement as a farmout agreement while the transferee, or "farmee," refers to its agreement as a "farmin agreement." Historically, DCNR and its predecessor, the Department of Environmental Resources, have routinely approved farmout agreements executed by lessees.

3. Following the drilling of these wells, TKI would have the option to develop additional wells. Upon completion of a well that began producing gas in paying quantities, TKI would "earn" the right to operate, maintain and produce oil and/or gas from the well. To effect this right, upon request from TKI, Equitable would provide an assignment of production rights for the wells "earned" by TKI. Petition for Review at 7–8.

this meeting to suggest that DCNR would withhold its approval.

By letters dated September 4 and September 12, 2002, TKI notified John Walker, Chief of DCNR's Minerals Section, of its first and second groups of proposed drilling locations in the Council Run Tract. Walker responded with two letters in which he expressed concerns that TKI would actually be a *sub*-farmee on several of the proposed wells, since Equitable was itself operating under a farmout agreement with the original lessee of those locations. Although Walker did not indicate that DCNR would not approve the proposed well sites, he stated that he was "not optimistic that the Department's response will be as prompt as you would like it to be." Petition for Review, Exhibit G.

In another meeting with DCNR on November 12, 2002, TKI's representatives were advised to be patient and that "changes in Commonwealth administration resulting from the then recent state-wide elections would temporarily delay approvals, but that once the new gubernatorial administration was in place, development of the Council Run Tract by [TKI] would proceed." Petition for Review at 9.

On April 15, 2003, Walker forwarded to TKI a new statement of policy entitled "DCNR's Farmee and Sub-Farmee Policy Relating To Oil And Gas Operations On State Forest Lands" (Policy). The Policy, effective January 1, 2003, states that

> [t]he *[D]epartment shall not recognize any new farmee or sub-farmee rights to conduct oil and gas drilling* or production operations on state forest lands *under oil and gas leases issued by this department.* Furthermore, if any new farmee or sub-farmee has commenced operations on or after January 1, 2003, on the leased premises, it shall be the responsibility of the lessee of record to comply with the following stipulations.

Petition for Review, Exhibit H.[4] (emphasis added). According to Walker's letter to TKI,

> The policy was developed in order to minimize forest management complexities and problems, which, our experience has shown, are associated with [farmee

4. The stipulations are as follows:

  1. The lessee shall actively participate in the oversight supervision of farmee or sub-farmee's work so as to insure the proper performance of field operations by farmee or sub-farmee, including, but not limited to, wellsite construction and gas measurement; and

  2. The lessee, not the farmee or sub-farmee, shall submit royalty and rental payments to the department from its lessee office; royalty payments should be accompanied by lessee's royalty statement acceptable to the department; and

  3. All correspondence with the department regarding farmee or sub-farmee oil and gas operations on leased premises shall be conducted through lessee's staff, not through farmee or sub-farmee personnel; this includes requests for the Bureau of Forestry's approval of proposed construction of new well locations, access roads and pipeline rights of way; and

  4. Any problems that may arise with farmee's or sub-farmee's oil and gas operations, as determined by [the] department, shall be resolved between the department and lessee of record who is solely responsible for all oil and gas operations on state forest lands; and

  5. Lessee's bonds shall continue to cover all obligations of the lease regardless of the identity of the actual well operator; and

  6. If the lessee elects not to actively participate in oil and gas operations on the leased premises, it has the option to either assign its leasehold rights to a responsible assignee acceptable to the department, according to the assignment provision of the oil and gas lease and the department's current assignment policies, or terminate its leasehold rights on all or part of the leased acreage, according to the termination, well-plugging and site-restoration provisions of the oil and gas lease.

Petition for Review, Exhibit H.

and sub-farmee] operations, and to emphasize that the lessee of record is solely responsible to the Department for all oil and gas operations on the leased lands. Petition for Review, Exhibit H.

In May 2003, TKI notified DCNR, as surface landowner, of seven proposed shallow gas well sites in the Council Run Tract. Petition for Review, Exhibit M. TKI supplied DCNR with copies of the drilling permit applications it intended to submit to the Department of Environmental Protection (DEP) and requested that DCNR approve the proposed well sites. *Id.* DCNR responded on June 19, 2003, advising TKI that, in accordance with the Policy, it would not consider approving the proposed well sites unless it received a written request for approval from Equitable, the lessee of record. Petition for Review, Exhibit N. Equitable, through Stephen Perdue, submitted a written request for approval of TKI's proposed well sites to DCNR. Petition for Review, Exhibit O. In response, Walker advised Equitable by letter dated September 22, 2003 that DCNR was not a party to the farmout agreement between Equitable and TKI and had not been provided with a copy of the agreement until March 2003, after the effective date of the Policy. Petition for Review, Exhibit P. Consequently, "*only* the lessees of record on these State Forest tracts are authorized to conduct oil and gas operations on them in compliance with the lease provisions. *Only* the lessees of record are legally responsible to the Department for performance under the leases." *Id.* (emphasis original). Walker further advised Equitable that, pursuant to the Policy, DCNR would not issue its standard Agreement for Consent to Assignment documents for the seven proposed well sites unless Equitable assumed total responsibility.[5]

TKI initiated the instant action in this Court's original jurisdiction by filing a Petition for Review in the Nature of a Complaint in Equity and a Complaint for Declaratory Judgment. In Count I of its complaint, TKI contends that DCNR promulgated the Policy in violation of the Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §§ 1102–1602 (frequently referred to as the "Commonwealth Documents Law"), and seeks a declaratory judgment striking the Policy on that ground. In Count II, TKI seeks a declaratory judgment that the Policy effects an unlawful taking of its property interest created by the farmout agreement with Equitable and that the matter should be remanded to the appropriate forum for a determination of damages. In Count III, TKI avers that DCNR, by promulgating and enforcing the Policy, unlawfully took without just compensation TKI's property interest in violation of the Fifth Amendment to the United States Constitution; TKI demands prospective injunctive relief pursuant to 42 U.S.C. § 1983 ordering DCNR to refrain from enforcing the policy against TKI plus an award of attorney fees and costs. In Count IV, TKI seeks a declaratory judgment that DCNR should be equitably estopped from applying the Policy with respect to TKI. In Count V, TKI avers that DCNR, by promulgating and enforcing the Policy, has violated the Contracts Clause of Article I, Section 10 of the United States Constitution by impairing TKI's rights under its farmout agreement with Equitable and under the oil and gas leases on the Council Run Tract. On this count,

5. Specifically, DCNR insisted that Equitable apply for the permits in its own name, operate the wells and resolve any operational problems, post the required well-plugging bonds, and make gas measurement, royalty and rental payments. Petition for Review, Exhibit P.

TKI seeks prospective injunctive relief pursuant to 42 U.S.C. § 1983 ordering DCNR to refrain from enforcing the Policy plus an award of attorney fees and costs.

DCNR has filed preliminary objections that this Court lacks subject matter jurisdiction because TKI failed to exhaust its administrative remedies and because TKI failed to join Equitable as an indispensable party. DCNR also raises three objections in the nature of a demurrer.[6]

In its first preliminary objection, DCNR argues that TKI's action should be dismissed for failure to exhaust administrative remedies. DCNR maintains that TKI's claims arise from DCNR's refusal to sign the landowner consent forms necessary for TKI to obtain drilling permits from DEP. In DCNR's view, TKI had adequate remedies under the Administrative Agency Law (AAL), 2 Pa.C.S. §§ 501–508, 701–704, and the General Rules of Administrative Practice and Procedure, 1 Pa.Code §§ 31.1–35.251, to challenge DCNR's refusal; accordingly, this equitable action is premature. TKI disagrees with DCNR's characterization of its action, arguing that it is not appealing DCNR's refusal to sign the landowner consent forms but, rather, it is seeking a declaration that the Policy is an improperly promulgated regulation. TKI claims that there are no administrative remedies for it to exhaust and that this case is properly before this Court in its original jurisdiction.

■ The doctrine of exhaustion of administrative remedies is a judicially created rule intended to prevent premature judicial intervention into the administrative process. *Empire Sanitary Landfill, Inc. v. Department of Environmental Resources*, 546 Pa. 315, 329, 684 A.2d 1047, 1053 (1996). Our Supreme Court has explained the operation of, and exceptions to, the exhaustion doctrine as follows:

> The doctrine of exhaustion of administrative remedies is founded on judicial recognition of the mandate of the legislature that statutorily prescribed remedies are to be strictly pursued.[7] It also is an acknowledgement that an unjustified failure to follow the administrative scheme undercuts the rationale upon which the administrative process is founded; that the technical nature of the subject and the ability of an administrative body to examine it suffice as a matter of public policy to displace preliminary court action.... Clearly our case law reinforces the rule that a party seeking relief must exhaust available administrative remedies before he may obtain judicial review.... However, "[w]here the administrative process has nothing to contribute to the decision of the issue and there are no special reasons for postponing its immediate decision, exhaustion should not be required." *Borough of Green Tree v. Board of Property Assessments*, 459 Pa. 268, 279, 328 A.2d 819, 824 (1974), *quoting* L. Jaffe, Judicial Control of Administrative Action 440 (1965). Furthermore, ex-

---

**6.** We are bound to accept as true all factual averments in TKI's petition in our consideration of DCNR's preliminary objections. *Marinari v. Department of Environmental Resources*, 129 Pa.Cmwlth. 569, 566 A.2d 385, 387 (1989). This Court must also accept as true all reasonable inferences which may be deduced from the well-pleaded facts when examining the legal sufficiency of the preliminary objections. *Id.* In order to sustain pre-

liminary objections, it must appear with certainty or be clear and free from doubt that, based on the facts as pleaded, that the law will not permit recovery. *Harrisburg School District v. Hickok*, 781 A.2d 221 (Pa.Cmwlth. 2001).

**7.** 1 Pa.C.S. § 1504 ("Statutory remedy preferred over common law").

haustion will not be required when the administrative process is not capable of providing the relief sought.

*Ohio Casualty Group of Insurance Companies v. Argonaut Insurance Company,* 514 Pa. 430, 435–436, 525 A.2d 1195, 1197–1198 (1987) (citations omitted).[8]

■ In support of its argument there are no administrative remedies for it to exhaust, TKI cites to the Conservation and Natural Resources Act, 71 P.S. §§ 1340.101–1340.1103, which "does not specify any procedure whatsoever for challenging the regulations issued by or the decisions made by [DCNR]—it does not create a review board, does not establish a formal mechanism for appealing a decision, and mentions nothing about the manner in which a party aggrieved by [DCNR] action can obtain administrative relief." Plaintiff's Brief at 16. TKI's reading of DCNR's enabling act, while correct, ignores a fundamental tenet of administrative law in this Commonwealth:

> When there are no specific provisions regarding adjudicatory actions of an agency, the Administrative Agency Law (AAL) provides a default mechanism for the provision of hearings and for appeals from administrative adjudications, which comport with due process requirements.

*Turner v. Pennsylvania Public Utility Commission,* 683 A.2d 942, 946 (Pa. Cmwlth.1996). Thus, the AAL does, as DCNR argues, provide a statutorily prescribed remedy that must be strictly pursued if there are no specific procedures contained in the controlling statute.

■ This presumes, however, that the agency action giving rise to TKI's claims constituted an adjudicatory action. This is a crucial determination because, as stated in *Turner,* the provisions of the AAL are triggered only upon an "adjudicatory action" by an agency such as DCNR.[9] *See also LaFarge Corp. v. Commonwealth, Insurance Department,* 690 A.2d 826, 833 n. 12 (Pa.Cmwlth.1997), *reversed on other grounds,* 557 Pa. 544, 735 A.2d 74 (1999) (noting that under the AAL, "there is no provision dealing with 'informal agency action.' The only question is whether the action is an adjudication, and if it is, all of the provisions of the [AAL] apply."). One of the primary mandates of the AAL is that an adjudication is not valid, *i.e.,* effective, until a record is made of the proceedings before the agency. The rationale behind this requirement is that judicial review without a proper record or a valid administrative adjudication is a premature interruption of the administrative process. *Canonsburg General Hospital v. Department of Health,* 492 Pa. 68, 422 A.2d 141 (1980). An adjudication is defined in the AAL as "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made." 2 Pa. C.S. § 101.

---

**8.** The exhaustion doctrine is implicitly recognized by Section 703(a) of the Administrative Agency Law, 2 Pa.C.S. § 703(a), wherein the General Assembly has provided that, other than a challenge to the validity of a statute, if an issue is not raised before the Commonwealth agency it cannot be raised on judicial review. *St. Clair v. Pennsylvania Board of Probation and Parole,* 89 Pa.Cmwlth. 561, 493 A.2d 146, 152 (1985).

**9.** The General Rules of Administrative Practice and Procedure define "agency" to include any department of the Commonwealth, 1 Pa. Code § 31.3, and expressly "govern the practice and procedure before agencies of the Commonwealth," with exceptions that are not relevant here. 1 Pa.Code § 31.1(a).

The question, then, is whether DCNR's September 22, 2003 letter to Equitable withholding landowner consent is a final determination of TKI's asserted property rights. First, TKI asserts contract rights under a gas and oil lease to which DCNR and TKI, by assignment from Equitable, are parties. Second, TKI asserts a right to a drilling permit that has been adversely affected by DCNR's action or, more properly speaking, inaction. TKI is entitled to a hearing on these claims, but not before this Court.

In its petition for review, TKI asserts an unlawful taking (Count II), a deprivation of property without due process (Count III) and a violation of the Contracts Clause (Count V). TKI seeks damages and other relief under 42 U.S.C. § 1983. Although stated as constitutional claims, they are contractual in nature. TKI avers that DCNR, by promulgating and enforcing the Policy, has impaired the performance of the underlying oil and gas leases to which the Commonwealth and TKI, as Equitable's assignee, are parties. TKI argues that those leases impose a good faith obligation on DCNR to approve assignments of oil and gas rights when certain qualifying conditions are met. TKI also argues that Pennsylvania law imposes an implied covenant of good faith and fair dealing with respect to the performance of all contracts, including the oil and gas leases and the assignment provisions contained therein. TKI contends that the Policy effectively relieves DCNR from compliance with its good faith obligations by "legislatively" eliminating the possibility that an assignment will ever be approved. Petition for Review at 18.[10]

■ These claims belong to the Board of Claims, not in an administrative hearing before DCNR. The jurisdiction of the Board of Claims is set forth in the Procurement Code, which provides, in pertinent part, as follows:

(a) **Exclusive jurisdiction.**—The board shall have exclusive jurisdiction to arbitrate claims arising from all of the following:

(1) A contract entered into by a Commonwealth agency in accordance with this part and filed with the board in accordance with section 1712.1 (relating to contract controversies).

62 Pa.C.S. § 1724(a). It is beyond peradventure that a lease is in the nature of a contract and is controlled by principles of contract law. *Ezy Parks v. Larson,* 499 Pa. 615, 626, 454 A.2d 928, 934 (1982). In *Ezy Parks,* the lessees of a right-of-way brought an action for injunctive relief against the Department of Transportation following the Department's alleged wrongful termination of their leases. This Court granted the injunction. Our Supreme Court reversed, finding that this Court abused its discretion in exercising its equitable powers to enjoin the Department from terminating the leases.

■ The *Ezy Parks* Court began its analysis by noting the exclusive jurisdiction of the Board of Claims to hear and determine virtually all contract claims against the Commonwealth. The Court explained that the exclusive remedy of monetary damages in the Board of Claims constituted a limited waiver of the sovereign immunity that ordinarily shields the Commonwealth from suit. Although the Court acknowledged that the legislature did not intend to deprive equity of jurisdic-

---

10. Therefore, in TKI's view, DCNR's Policy violates the Contracts Clause of Article I, Section 10 of the United States Constitution. TKI requests this Court to prospectively en-join DCNR from enforcing the Policy pursuant to 42 U.S.C. § 1983 and award it attorney fees and costs.

tion in all cases,[11] it held that the exclusive statutory remedy for a breach of a lease is for monetary damages in the Board of Claims and that such remedy is constitutionally adequate. *Id.,* 499 Pa. at 628, 454 A.2d at 935. *See also Stambaugh's Air Service, Inc. v. Larson,* 97 Pa.Cmwlth. 474, 509 A.2d 1377, 1379 (1986). (Commonwealth Court cannot adjudicate claims against the Commonwealth arising out of leases, unless those claims are either collateral to the lease or within an exception to the doctrine giving exclusive jurisdiction to the Board of Claims).

Thus, DCNR lacks subject matter jurisdiction to determine whether or not it is in compliance with its contractual obligations under the relevant gas and oil leases. DCNR's Policy appears to be an abrogation of Equitable's contract right to assign its leasehold rights with the approval of DCNR. Although DCNR is not obligated to consent, it may not withhold consent

unreasonably. Further, once an assignment has been lawfully effected, the assignor, by the very terms of the lease, has no further involvement in the lease. DCNR's Policy, however, would keep Equitable a party to the lease even after assignment.

■ Irrespective of the Policy, TKI's contentions derive from the oil and gas leases which Equitable assigned to TKI by virtue of the farmout agreements.[12] As stated above, TKI contends that by applying the Policy to TKI, DCNR has substantially impaired the assignment provision of the oil and gas leases by effectively eliminating the possibility that an assignment will ever be approved. This, TKI argues, violates DCNR's good faith obligation under the leases and Pennsylvania law to approve assignments of oil and gas rights when certain qualifying conditions are met.[13] Since TKI is effectively instituting

**11.** The Supreme Court suggested, for example, that it would be inappropriate to limit the remedy to only monetary damages in cases where a fundamental constitutional right is irreparably threatened and such damages would be inadequate. *Ezy Parks,* 499 Pa. at 628, 454 A.2d at 935. In any event, it matters not for purposes of our decision that the Board of Claims is powerless to award forms of relief other than monetary damages. It is a well settled principle of law that "the test for determining whether a court has jurisdiction of the subject matter is whether the court is competent to determine controversies of the general class to which the case presented belongs, and the controlling question is whether the court has power to enter upon the inquiry and *not whether it was unable to grant the relief sought." Vespaziani v. Department of Revenue,* 40 Pa.Cmwlth. 54, 396 A.2d 489, 491 (1979) (emphasis original) (finding Board of Claims had jurisdiction over contract action against Commonwealth seeking specific performance).

**12.** It is of course axiomatic that an assignee "stands in the shoes" of the assignor and assumes the rights of the assignor. *Crawford*

*Central School District v. Commonwealth,* 839 A.2d 1213, 1216 (Pa.Cmwlth.2004). Thus, as Equitable's assignee, TKI assumes the rights and obligations of Equitable under its oil and gas lease agreements with the Commonwealth.

**13.** TKI has provided a sample oil and gas lease that is representative of those executed by Equitable and the then Department of Environmental Resources. With respect to assignments, the lease provides as follows:

Lessee shall not use or allow to be used, the leased premises for any other purpose than authorized by this instrument and shall not assign or sublet the leased premises in whole or in part at any time or from time to time without the prior written consent of Department. *Lessee shall make application to obtain such consent in writing accompanied by a plat to Department describing the land to be assigned and the interest therein if less than the whole, together with the interest retained by assignor. Assignee shall agree in writing to be bound by all of the terms and provisions of the lease and shall furnish a surety or performance bond satisfactory to Department. After Department*

a claim against the Commonwealth seeking the enforcement of rights that were created (and assigned) by contract, the Board of Claims is the proper forum to adjudicate these claims.

■ Next we consider TKI's claims that relate to the permits it needs to drill well sites in the Council Run Tract in accordance with its leases. In this case, DCNR is the owner and lessor of the Council Run Tract. It is not, however, empowered to issue or transfer permits for the drilling of natural gas wells; that power is reserved to DEP.[14] Although DCNR, as surface landowner, must consent to the well sites proposed by TKI, the final decision or determination by an agency affecting the property rights of TKI (or Equitable)

would be DEP's decision on whether or not to issue the drilling permits. Thus, TKI's proper course of action is to pursue the drilling permits and, if they are denied by DEP, appeal that denial to the Environmental Hearing Board (EHB), which is statutorily empowered to review such decisions.[15] A hearing before the EHB would provide TKI with a forum in which to assert any claims related to the permit approval process, including challenges to DCNR's promulgation of the Policy, the legal theory behind the Policy and the application of the Policy to TKI. In the event of an adverse decision by the EHB, an appeal would then lie to this Court in its appellate jurisdiction and any or all of TKI's claims would be fully reviewable at

---

has consented to the assignment, *assignor shall be released from all liability under this lease* arising or accruing subsequent to the date of such assignment as to the part or parts so assigned and assignee, thereof, shall, thereupon, be deemed to have assumed and be responsible for the covenants, conditions, and obligations of this lease as to the part or parts assigned. In the event that a portion only of the leased premises is assigned, the default of any of the covenants, conditions, or obligations of this lease by one of the holders of a portion of the leased premises created by an assignment will not affect the interests of a party not in default.

Petition for Review, Exhibit A, at 14 (emphasis added).

14. See 25 Pa.Code § 78.11(a) ("No person may drill or alter a well unless that person has first obtained a permit from the Department [of Environmental Protection]."); 25 Pa.Code § 78.13(a) ("No transfer, assignment or sale of rights granted under a permit or registration may be made without prior written approval of the Department [of Environmental Protection].").

15. The jurisdiction of the EHB is set forth in the Environmental Hearing Board Act (EHBA), Act of July 13, 1988, P.L. 530, *as amended,* 35 P.S. §§ 7511–7516. Section 4 of

the EHBA provides, in relevant part, as follows:

(a) **General rule.**—The board has the power and duty to hold hearings and issue adjudications under 2 Pa.C.S. Ch. 5 Subch. A (relating to practice and procedure of Commonwealth agencies) on orders, *permits,* licenses or decisions of the department.

. . . .

(c) **Departmental action.**—The department may take an action initially without regard to 2 Pa.C.S. Ch. 5 Subch. A, but *no action of the department adversely affecting a person shall be final as to that person until the person has had the opportunity to appeal the action to the board* under subsection (g) ["Procedure"]. If a person has not perfected an appeal in accordance with the regulations of the board, the department's action shall be final as to the person.

35 P.S. § 7514 (emphasis added). "Department" is still defined in the EHBA as "[t]he Department of Environmental Resources." 35 P.S. § 7512. Pursuant to the provisions of the Conservation and Natural Resources Act reserving in DEP all of the duties and functions formerly imposed upon the Department of Environmental Resources, 71 P.S. § 1340.503(a), which would include issuance of permits, it is clear that "department" in this context refers to DEP.

that time.[16]

Based upon the foregoing discussion, we find that TKI's permit claims are not yet ripe for review. In *Gardner v. Department of Environmental Resources*, 658 A.2d 440, 444 (Pa.Cmwlth.1995), this Court explained the ripeness doctrine, and contrasted it with the exhaustion doctrine, as follows:

Ripeness and exhaustion are similar in that they both deal with timing of judicial review but they are distinct concepts. Ripeness arises out of a judicial concern not to become involved in abstract disagreements of administrative policies. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). It has been defined as the presence of an actual controversy. *American Council of Life Insurance v. Foster*, 134 Pa.Commonwealth Ct. 634, 580 A.2d 448 (1990). It insists on a concrete context, where there is a final agency action so that the courts can properly exercise their function. The doctrine of ripeness is described as a legal principle "instructing courts to review government actions only when the government's position has crystallized to the point at which a court can identify a relatively discrete dispute." Davis &

Pierce, *Administrative Law Treatise*, vol. II, § 15.12 (3rd edition).[17]

The concerns expressed in *Gardner* are present here. TKI essentially asks us to become involved in an abstract disagreement over the propriety of a policy adopted by DCNR and DEP's reliance thereon in qualifying TKI for a permit. The ripeness doctrine insists on a more concrete context, *i.e.*, one involving a final agency action and a factual record that would allow this Court to properly review TKI's substantive claims. There is simply no justiciable controversy at this time. TKI's proper course of action is to complete the permit application process and thereafter appeal a denial, if that is the result, in accordance with the statutory procedures.

In ruling on preliminary objections we must accept all well pleaded facts as true and binding. Accordingly, it must be assumed that TKI acquired Equitable's right to seek DCNR's consent to the assignment of the Council Run Tract leases and that on September 22, 2003, DCNR unreasonably withheld consent to the assignment requested by TKI. It is for the Board of Claims to decide whether DCNR can interpose a viable defense on the basis of its Policy.[18] It appears that by this

---

16. With regard to the permitting issue, this case should proceed like the case of *Mock v. Department of Environmental Resources*, 154 Pa.Cmwlth. 380, 623 A.2d 940 (1993). In that case, the Mocks applied to DER for a permit to fill wetlands on their property in order to construct an auto repair shop. DER denied the application. The Mocks appealed the denial to the EHB, arguing that the department erred in denying their permit and, like TKI, that the department's action constituted a taking of their property. Although DER ultimately prevailed, the hearings conducted by the EHB allowed the parties to make a factual and evidentiary record, which in turn aided this Court in the performance of its appellate function. Those crucial intermediate steps are absent in the present case.

17. We note that DCNR has not raised the issue of ripeness in its preliminary objections. However, since lack of ripeness goes to our subject matter jurisdiction, we may raise the issue *sua sponte*. *Brown v. Liquor Control Board*, 673 A.2d 21, 23 (Pa.Cmwlth.1996).

18. TKI asserts that the Policy is an unpublished regulation. However, the Commonwealth Documents Law does not require an agency to publish statements of policy in the same manner as regulations. *See* 45 P.S. §§ 1102(12), (13); 1201–1202. Further, only a regulation has the force and effect of law that is binding on the agency. *Department of Environmental Resources v. Rushton Mining Company*, 139 Pa.Cmwlth. 648, 591 A.2d

Policy DCNR has announced to all who have leases with DCNR to conduct gas and oil operations on state-owned forest lands that the assignment clause in their leases has been unilaterally abrogated. Whether DCNR has this right by contract can be determined by the Board of Claims. Even if not, DCNR may have a reasonable basis for withholding consent to the particular assignment between Equitable and TKI.

Accordingly, the contractual claims in the petition for review are transferred to the Board of Claims. However, the claim that TKI has been improperly denied a permit to drill gas wells in the Council Run Tract is dismissed as premature and is not a proper subject for consideration by the Board of Claims.

### ORDER

AND NOW, this 7th day of June, 2004, the Petition for Review filed by Texas Keystone Incorporated in the above-captioned matter is transferred to the Board of Claims.

1168, 1173 (1991). A statement of policy does not have the force of law. *Id.*