IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Louis A. DeNaples, : 
           Petitioner : 
            : 
           v. : No. 2074 C.D. 2015
            : Argued: September 14, 2016
Pennsylvania Gaming : 
Control Board, : 
           Respondent : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE ROBERT SIMPSON, Judge
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE JULIA K. HEARTHWAY, Judge
              HONORABLE JOSEPH M. COSGROVE, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT            FILED: December 2, 2016

Louis A. DeNaples petitions for review of an adjudication of the Pennsylvania Gaming Control Board (Board) that denied DeNaples' request to modify two prior orders of the Board. DeNaples argues that these orders have prevented him and his companies from doing business with the Mount Airy Casino Resort. DeNaples challenges the procedures by which the Board voted to deny his requested relief; the Board's interpretation of its prior orders; and the propriety of the Board's prohibitions on his ability to do business in the gaming industry. We affirm.

## Background

In 2007, the Gaming Board issued a Category 2 Slot Machine License to Mount Airy #1, LLC, d/b/a Mount Airy Casino Resort (Mount Airy) and a

Principal License to DeNaples, the sole owner of Mount Airy. In 2008, the Board's Bureau of Investigations and Enforcement (Bureau)[1] accused DeNaples of making false statements to the Bureau during its background investigation on the license applications. When DeNaples was arrested and charged with perjury, the Board suspended DeNaples' Principal License. In addition, the Board forbade DeNaples from receiving compensation, consideration, or distribution of funds related to Mount Airy or from exercising any control over Mount Airy. With Board approval, Mount Airy appointed a trustee to oversee the casino's operations.

In 2009, the Dauphin County District Attorney withdrew the perjury charge against DeNaples. The Board conditionally lifted its suspension of DeNaples' Principal License, but it continued to restrict his involvement in Mount Airy's operations. Mount Airy filed a petition with the Board, seeking, among other things, to vacate the Board's previous orders. On September 23, 2009, the Board granted Mt. Airy's petition, but it imposed certain conditions to limit DeNaples' interest in, and control of, Mount Airy. Condition 13 of the order, for example, provided:

> That Louis A. DeNaples may not receive, directly or indirectly, any remuneration, cash, or property distributions, from the Grantor II Trust of Lisa A. DeNaples, Mount Airy #1, LLC or Mount Airy Holdco, LLC, other than principal payments and interest payments from the various loans made to the Grantor II Trust of Lisa A. DeNaples.

---

[1] The Bureau of Investigations and Enforcement is an independent bureau within the Board, responsible, in part, for investigating and reviewing applicants and their applications for licenses, permits, or registrations. 4 Pa. C.S. §1517(a).

Certified Record (C.R.) Item 1, Exhibit C, at 4; Reproduced Record at 58a (R.R. __).

In 2011, the Court of Common Pleas of Dauphin County expunged DeNaples' arrest record and ordered that "no one, including law enforcement, state licensing authorities, or other government officials, is permitted access to [DeNaples' expunged records]…." C.R. Item 1, Exhibit F, at 1; R.R. 67a. Following the expungement, Mount Airy filed a petition seeking, *inter alia*, an amendment to the Board's September 23, 2009, Order to lift all restrictions on DeNaples. On June 13, 2012, the Board denied Mount Airy's request, stating that the restrictions in the September 23, 2009, Order remained in place. The Board's order also allowed DeNaples' Principal License to expire and his renewal application to be withdrawn without prejudice. Nevertheless, the Board imposed conditions similar to those that had appeared in its September 23, 2009, Order. For example, Condition 5 in the June 13, 2012, Order provides as follows:

> The Children's Trusts, Mount Airy #1, LLC ("Mount Airy") or Mount Airy Holdco, LLC[] ("Holdco") may not provide Louis A. DeNaples, directly or indirectly, any remuneration, cash or property distributions from any of the Children's Trusts, Mount Airy or Holdco without prior Board approval.

C.R. Item 1, Exhibit I, at 2; R.R. 162a. Mount Airy petitioned the Board for a declaration that its June 13, 2012, Order did not prohibit Mount Airy from contracting with a business in which DeNaples had an ownership interest. The Board did not act upon that petition.

Mount Airy then petitioned the Board to modify its September 23, 2009, and June 13, 2012, Orders to allow Mount Airy to contract with a business in which DeNaples had an ownership interest. A public hearing was held. The

3

petition was tabled for a period of 90 days for the Office of Enforcement Counsel[2] and DeNaples to meet and discuss the scope of any background investigation required. When no agreement was reached, the Board denied Mount Airy's petition without prejudice.

On February 2, 2015, DeNaples petitioned the Board to modify its September 23, 2009, and June 13, 2012, Orders to remove all conditions that prevent him and his companies from doing business with Mount Airy. In this petition, DeNaples asserted, among other things, that the Board was prohibited from investigating his 2008 perjury charge because the Dauphin County Court of Common Pleas had expunged those arrest records. DeNaples also asserted that the Board's continuing imposition of restrictions on him and his companies violated his state and federal constitutional rights. The Board had no reasonable basis to treat him and his companies differently than other gaming service providers. Finally, DeNaples alleged that the Board's position that he was unfit to do business with Mount Airy was discriminatory and unsupported by the record. The Office of Enforcement Counsel filed an "Answer, Objection and New Matter," to which DeNaples filed a response.

A public hearing was held. The Board voted four to three in favor of granting DeNaples relief. The Board, nevertheless, denied DeNaples' petition because there was not a qualified majority vote in his favor.[3] The three dissenting

---

[2] The Office of Enforcement Counsel is established within the Bureau and acts as the prosecutor in all noncriminal enforcement actions initiated by the Bureau. 4 Pa. C.S. §1517(a.2).

[3] By way of background, Section 1201(b) of the Pennsylvania Race Horse Development and Gaming Act (Gaming Act) provides that the Board "shall consist of the following members: (1) Three members appointed by the Governor. (2) One member appointed by each of the following: (i) The President pro tempore of the Senate. (ii) The Minority Leader of the Senate. (iii) The Speaker of the House of Representatives. (iv) The Minority Leader of the House of **(Footnote continued on the next page . . . )**

Board members filed an adjudication explaining their votes. They opined that a full vetting would be required before the Board could lift the restrictions it had imposed on DeNaples because his conduct in the perjury case involved potential untruthfulness to the Board. Although the Dauphin County District Attorney decided to not pursue criminal charges against DeNaples, and the related record was expunged, it did not follow that the alleged misconduct did not occur. The dissenting members found that the expungement orders did not prohibit either the Bureau or the Office of Enforcement Counsel from inquiring into DeNaples' history. DeNaples had never explained the circumstances underlying his perjury charge. The Board further explained that information available online could serve as an independent basis for inquiry. The Board concluded that it had a reasonable basis to treat DeNaples differently than other gaming service providers by fully vetting him.

DeNaples filed two petitions for reconsideration, in which he argued that the Board erred in requiring a qualified majority vote to grant his petition. Alternatively, he argued that the qualified majority vote rule is unconstitutional. The Board did not act on DeNaples' petitions. DeNaples now petitions for this Court's review.[4]

---

**(continued . . . )**

Representatives." 4 Pa. C.S. §1201(b). The Gaming Act further provides that a qualified majority vote consists of at least one gubernatorial appointee and the four legislative appointees. 4 Pa. C.S. §1201(f). Section 1201(f) is discussed in greater detail later in this opinion.

[4] Our review of the Board decision is to determine whether the Board: "(1) erred as a matter of law; or (2) acted arbitrarily and in capricious disregard of the evidence." *Philadelphia Entertainment and Development Partners, L.P. v. Pennsylvania Gaming Control Board*, 34 A.3d 261, 267 (Pa. Cmwlth. 2011).

**Appeal**

In his petition for review, DeNaples raises six issues, which we combine into three for clarity. First, he argues that the Board erred in requiring a qualified majority of its members to act favorably on his petition. Alternatively, DeNaples contends that the qualified majority vote rule is unconstitutional. Second, DeNaples argues that the Board erred in finding that the September 23, 2009, and June 13, 2012, Orders prohibit Mount Airy from contracting with a business in which he has an ownership interest. Third, DeNaples asserts that the Board erred in holding that it can subject him to a full vetting to become a gaming service provider of Mount Airy. We address these issues *seriatim*.

**I.**

In his first issue, DeNaples argues that the Board erred in requiring a qualified majority vote to grant his petition to modify the Board's September 23, 2009, and June 13, 2012, Orders. DeNaples asserts that a qualified majority vote applies only to matters involving "gaming licenses or orders or acts made by one or more members of the Board," which does not include a petition to modify a Board order. Petitioner's Brief at 63. DeNaples notes that when issuing the September 23, 2009, and June 13, 2012, Orders, the Board employed a simple majority vote. It follows that a modification of those orders should likewise require no more than a simple majority vote. Even so, DeNaples argues that the qualified majority vote rule is unconstitutional, facially and as applied to his petition.

The Board counters that all of its actions require a qualified majority vote, except for imposition of a sanction in an enforcement-type action. A petition

to modify a Board order does not meet this exception. The Board also rejects DeNaples' claim that it used a simple majority vote when it issued the September 23, 2009, and June 13, 2012, Orders; rather, it used the qualified majority vote. Finally, the Board argues that this Court lacks jurisdiction to hear DeNaples' constitutional challenges to the qualified majority vote rule because the Pennsylvania Supreme Court has exclusive jurisdiction over those claims.

The Pennsylvania Race Horse Development and Gaming Act (Gaming Act), 4 Pa. C.S. §§1101-1904, requires a qualified majority vote for certain Board actions. Section 1201(f) of the Gaming Act provides:

> (f) Qualified majority vote.--
>
> (1) Except as permitted in paragraphs (2) and (3), *any action, including, but not limited to*, the approval, issuance, denial or conditioning of any license by the board under this part or the making of any order or the ratification of any permissible act done or order made by one or more of the members, shall require a qualified majority vote consisting of at least one gubernatorial appointee and the four legislative appointees.
>
> (2) Any action to suspend or revoke, not renew, void or require forfeiture of a license or permit issued under this part, to impose any administrative fine or penalty under this part or to issue cease and desist orders or similar enforcement actions shall require a majority vote of all the members appointed to the board.
>
> (3) Notwithstanding any other provision of this part or 65 Pa. C.S. § 1103(j) (relating to restricted activities), a member shall disclose the nature of his disqualifying interest, disqualify himself and abstain from voting in a hearing or proceeding under this part in which his objectivity, impartiality, integrity or independence of judgment may be reasonably questioned, as provided in

7

> subsection (h)(6) or section 1202.1(c)(3) (relating to code of conduct). If a legislative appointee has disqualified himself, the qualified majority shall consist of all of the remaining legislative appointees and at least two gubernatorial appointees.

4 Pa. C.S. §1201(f) (emphasis added). The Board has promulgated similar regulations regarding participation in meetings and voting. *See* 58 Pa. Code §403a.2.

We agree with the Board that it properly applied a qualified majority vote to decide DeNaples' petition. All actions of the Board, except those specifically enumerated, require a qualified majority vote. 4 Pa. C.S. §1201(f)(1). The enumerated actions subject to a simple majority vote under Section 1201(f)(2), such as suspension, revocation, or forfeiture of a license, are all administrative sanctions. DeNaples' petition to modify the Board's orders is not one of those enumerated actions. We reject DeNaples' contrary argument. By including the phrase "including, but not limited to" in Section 1201(f)(1), the legislature intended that the qualified majority vote rule apply to not just the specific actions identified in that subsection. 4 Pa. C.S. §1201(f)(1). Stated otherwise, an action that is not specifically listed under Section 1201(f)(1) may nonetheless require a qualified majority vote, so long as it is not an enumerated exception in Section 1201(f)(2). The Board did not err in applying a qualified majority vote to DeNaples' petition.

We also agree with the Board that this Court does not have jurisdiction to hear DeNaples' constitutional challenge to the qualified majority vote rule. Section 1904 of the Gaming Act, 4 Pa. C.S. §1904, provides:

> *The Pennsylvania Supreme Court shall have exclusive jurisdiction to hear any challenge to* or to render a declaratory

8

judgment concerning *the constitutionality of this part.*[5] The Supreme Court is authorized to take such action as it deems appropriate, consistent with the Supreme Court retaining jurisdiction over such a matter, to find facts or to expedite a final judgment in connection with such a challenge or request for declaratory relief.

4 Pa. C.S. §1904 (emphasis added). DeNaples' challenge to the qualified majority vote rule in Section 1201(f) of the Gaming Act, 4 Pa. C.S. §1201(f), falls squarely within the Supreme Court's exclusive jurisdiction. This Court, accordingly, has no jurisdiction to consider that claim.

## II.

DeNaples argues, next, that the Board erred in finding that its September 23, 2009, and June 13, 2012, Orders prohibit Mount Airy from contracting with a business in which DeNaples has an ownership interest. DeNaples construes these orders to prohibit him from receiving compensation from Mount Airy, but not to prohibit Mount Airy from contracting with his businesses. DeNaples also argues that the Board, through its broader interpretation of the two orders, effectively adjudicated him and his companies as "Prohibited Gaming Service Providers"[6] without following the established regulations and procedures for making such a designation. As a result, his due process rights were violated. Even assuming that the Board can interpret its own orders in this way, DeNaples argues that the language of the two orders was ambiguous and, thus, deprived him of adequate notice. The Board responds that DeNaples waived any

---

[5] "[T]his part" refers to the entire Gaming Act, codified in Part II of Title 4 of the Pennsylvania Consolidated Statutes, 4 Pa. C.S. §§1101-1904.

[6] *See* Section 1317.2(g) of the Gaming Act, 4 Pa. C.S. §1317.2(g), discussed in greater detail *infra*.

claim regarding the language of the September 23, 2009, and June 13, 2012, Orders by failing to raise it before the Board. In any case, the Board argues that it did not treat DeNaples or his businesses as *de facto* prohibited gaming service providers because it never identified any of these businesses as having violated the Board's regulations.

Initially, we consider whether DeNaples' claims regarding the Board's September 23, 2009, and June 13, 2012, Orders are ripe for review.[7] A court of law lacks "the ability to grant any relief that is merely advisory, one that does not involve any case or controversy." *Brown v. Pennsylvania Liquor Control Board*, 673 A.2d 21, 23 (Pa. Cmwlth. 1996). Stated otherwise, an action "may not be employed to determine rights in anticipation of events which may never occur … or as a medium for the rendition of an advisory opinion which may prove to be purely academic." *Id*. An issue that "may" arise in the future "is not considered 'ripe' for judicial interpretation." *Id*. (citation omitted). As this Court observed in *Texas Keystone Inc. v. Department of Conservation and Natural Resources*, 851 A.2d 228, 239 (Pa. Cmwlth. 2004) (citations omitted), ripeness "arises out of a judicial concern not to become involved in abstract disagreements of administrative policies.… It has been defined as the presence of an actual controversy…. It insists on a concrete context, where there is a final agency action so that the court can properly exercise their function."

Whether the Board has interpreted its September 23, 2009, and June 13, 2012, Orders as prohibiting Mount Airy from contracting with DeNaples'

---

[7] The Board does not raise the issue of ripeness. However, because ripeness is a jurisdictional issue, we may raise it *sua sponte*. *Texas Keystone, Inc. v. Department of Conservation and Natural Resources*, 851 A.2d 228, 239 n.17 (Pa. Cmwlth. 2004).

businesses is unclear. The Board did not make that determination in the final order that has been appealed in this case. As DeNaples concedes, the only issue on which the Board voted was whether the restrictions imposed on Mount Airy by the September 23, 2009, and June 13, 2012, Orders should be lifted. Petitioner's Brief at 40. DeNaples did not question, and the Board did not consider, whether those restrictions applied to his businesses. DeNaples essentially asks this Court to interpret the language of the two Orders as authorizing Mount Airy to contract with his businesses before the Board has had an opportunity to make that determination. Until the Board acts, there is no controversy for this Court to review.

DeNaples also argues that the Board's interpretation of these orders has effectively made him and his businesses prohibited gaming service providers without following the statutory procedures applicable thereto. Section 1317.2(g)(2) of the Gaming Act provides: "[t]he board shall … [d]evelop and maintain a list of prohibited gaming service providers. An applicant for a slot machine license or a slot machine licensee may not enter into an agreement or engage in business with a gaming service provider listed on the prohibited gaming service provider list." 4 Pa. C.S. §1317.2(g)(2). The Board's regulation provides the criteria for placement on the prohibited gaming service provider list:

> (c) The Board may place a person on the prohibited gaming service providers list if:
>
> > (1) The gaming service provider has failed to comply with this chapter.
> >
> > (2) The gaming service provider has failed to cooperate with Board staff in its review and investigation of the gaming service provider's application.

11

(3) The gaming service provider's application for certification or registration has been denied or withdrawn with prejudice or the gaming service provider has had its gaming service provider certification or registration suspended or revoked.

(4) The gaming service provider has failed to provide information to a slot machine applicant or licensee that is necessary for the slot machine applicant or licensee to comply with this chapter.

58 Pa. Code §437a.8(c).  In short, the Board has authority to name an individual or business, that has violated the regulation, as a prohibited gaming service provider and prohibit that provider from contracting with a slot machine licensee.

Here, the Board voted to deny DeNaples' petition to modify its two prior Orders, thereby leaving in place the restrictions imposed on Mount Airy. However, the Board did not prohibit DeNaples or his businesses from contracting with other slot machine licensees.  Nor did the Board find that either DeNaples or his businesses had violated the regulation or place either one on the prohibited gaming service provider list.  As the dissenting members stated in the adjudication: "[n]o one on this Board has concluded that DeNaples has done anything improper….  Indeed, Chief Enforcement Counsel … has repeatedly stated that his only desire is to clarify the record in an earlier investigation of DeNaples…." Board Adjudication, 9/24/2015, at 12; C.R. Item 15, at 12.  Because the Board has not placed DeNaples or his businesses on the prohibited gaming service provider list, we conclude that DeNaples' claim is not ripe for review.

## III.

Finally, DeNaples argues that the Board erred in finding that he should be subject to a full vetting to become a gaming service provider of Mount Airy.  DeNaples argues that he should not be subject to any background

12

investigation because he intends to do less than $100,000 of business with Mount Airy.[8] He asserts that the decision to impose a full vetting on him is discriminatory, lacks reasonable basis, and violates his constitutional rights. DeNaples further argues that because the Bureau and the Office of Enforcement Counsel are bound by the Dauphin County court's order expunging the records of DeNaples' arrest for perjury in 2008, they cannot consider his arrest record or any information about his arrest that was independently discovered. DeNaples asks this Court to order the Board to "preclude [the Bureau/Office of Enforcement Counsel] from accessing and/or using any of these expunged records against [him] in any form of vetting or background investigation." Petitioner's Brief at 56. The Board counters that DeNaples' challenge to the scope of his background investigation is not ripe for this Court's review. We agree.

---

[8] Section 437a.1 of the Board's regulation provides, in relevant part:

> (a) Except as provided in §437a.10 (relating to emergency gaming service provider), a gaming service provider or person seeking to conduct business with a slot machine applicant or licensee shall apply to the Board for registration if:
>
> > (1) The total dollar amount of the goods or services to be provided to a single slot machine applicant or licensee or to multiple slot machine applicants or licensees will be or is anticipated to be equal to or greater than $100,000 but less than or equal to $500,000 within a consecutive 12-month period.
>
> * * *
>
> (i) A gaming service provider of a slot machine applicant or licensee whose compensation does not exceed the monetary thresholds contained in this section … may be required to be registered or certified if the Board determines that registration or certification is necessary to protect the integrity of gaming.

58 Pa. Code §437a.1. DeNaples argues that he need not be subject to any background investigation because the Board never determined in his case that registration or certification was required to protect the integrity of gaming. Petitioner's Brief at 46.

In the adjudication, the dissenting Board members suggested that the Bureau do a full vetting on DeNaples before the restrictions on Mount Airy can ever be lifted. However, the only issue before the Board, as noted earlier, was whether to grant DeNaples' petition to lift the restrictions imposed on Mount Airy by the September 23, 2009, and June 13, 2012, Orders. When he filed this petition, DeNaples had not been subject to vetting by the Bureau; in fact, he has not been vetted since 2006. There is simply no final agency action on the vetting issue for this Court to review. Although DeNaples may disagree with the dissenting Board members' suggestion that he be fully vetted, this Court will not "become involved in abstract disagreements of administrative policies." *Texas Keystone*, 851 A.2d at 239. Determining the scope of DeNaples' background investigation at this juncture would be an improper advisory opinion.

## Conclusion

For all of these reasons, we affirm the Board's September 2, 2015, order.

_____
MARY HANNAH LEAVITT, President Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Louis A. DeNaples,     :
     Petitioner  :
            :
    v.      : No. 2074 C.D. 2015
            :
Pennsylvania Gaming   :
Control Board,     :
     Respondent :

# **O R D E R**

AND NOW, this 2nd day of December, 2016, the order of the Pennsylvania Gaming Control Board dated September 24, 2015, in the above-captioned matter is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge