Jurisdiction relinquished.

### OAKLAND PLANNING AND DEVELOPMENT CORPORATION, Appellant

v.

### The CITY OF PITTSBURGH PLANNING COMMISSION and Oakland Portal Partners, L.P.

Commonwealth Court of Pennsylvania.

Argued Nov. 10, 2014.

Decided Jan. 9, 2015.

Lawrence H. Baumiller, Pittsburgh, for appellant.

William R. Sittig, Jr., Pittsburgh, for appellee Oakland Portal Partners, L.P.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, PATRICIA A. McCULLOUGH, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge McCULLOUGH.

Oakland Planning and Development Corporation (Appellant), an owner of rental property on Robinson Street, appeals from the February 25, 2014 order of the Allegheny County Court of Common Pleas (trial court), affirming the decision of the City of Pittsburgh (City) Planning Commission (Planning Commission) that ap-

proved Oakland Portal Partners, L.P.'s (Oakland Portal) project development plan application. We affirm.

### Facts and Procedural History

Oakland Portal owns an approximately 3.68–acre parcel of land (Property) located in the Oakland Public Realm Zoning District. The Property is bounded to the north by Fifth Avenue and to the south by Forbes Avenue, with the southern edge of the Property bounded by the Boulevard of the Allies. Oakland Portal filed an application for approval to construct a nine-story office building with four stories of parking below the building on the Property with the zoning administrator. The Planning Commission reviewed the application and held two hearings on March 5, 2013, and April 16, 2013. (Trial court op. at 1.)

The zoning administrator submitted a written development review report to the Planning Commission, which states her findings of fact as follows:

1. An application for [the project development plan] has been filed by TKA [A]rchitects on behalf of Oakland Portal Partners, LP for the new construction of a nine-story office building (at the 5th Avenue elevation) with four stories of integral parking below this elevation. The future building uses may include restaurant (limited) or retail space.

2. The application also includes a private driveway for the site and construction of signalized intersection at 5th and Robinson Street. The design of the intersection has been reviewed and approved by Patrick Roberts, City Planning Transportation Planner, and Amanda Purcell, City Traffic Engineer.

3. The applicant is working with the Transportation Planner on a plan with Carnegie Mellon University and Traffic21 for monitoring movement and data counts at the new signalized intersection at Fifth Avenue and Robinson Street. The goals are of this [sic] include summary reporting for pre- and post-conditions; analysis of enforcement measures; and public sharing of data.

4. The application also includes wider site work, which includes pads for future building "B" (office and parking) and building "C" (for office, hotel, and parking). The future buildings for the site will require design review and Planning Commission approval; however the special exceptions and variances have been given for the height and setbacks of all the proposed structures.

5. The project went before the Zoning Board last year … for issues related to height and setbacks. The project received a variance and special exception for height (as per [City of Pittsburgh Zoning Code (Zoning Code) ] section 908.03.D.4.f[, Zoning Code, § 908.03.D.4.f] ) and variances for reduced setbacks (as per [Zoning Code] section 908.03.D.4.c[, Zoning Code, § 908.03.D.4.c] ) for all of the proposed building sites on this lot.

6. Per [Zoning Code] [s]ection 922.10.-E.2[, Zoning Code, § 922.10.E.2]; all new construction, demolition, changes of use, interior renovations creating additional units, and exterior alterations in excess of $50,000 in the Oakland Public Realm district are each required to be reviewed and approved as a Project Development Plan. The Commission bases its decision on the criteria that are outlined below:

a. The proposal must maintain and continue the existing retail patterns;

b. The proposal must address compatibility with existing residential areas;

c. The proposal must make provision for adequate parking, transit and loading;

d. The proposal must address traffic impacts in relation to capacity, intersection, and traffic volumes and address alternatives that would enable traffic to be directed away from residential districts[;]

e. The proposal must address pedestrian traffic, circulation and patterns, and pedestrian safety;

f. The proposal must address access to public transportation facilities;

g. The proposal must address the preservation of historic and preservation significant [sic] existing buildings;

h. The proposal must address architectural relationships with surrounding buildings;

i. The proposal must address microclimate effects;

j. The proposal must be sensitive to views and view corridors;

k. The proposal must address the location, development and functions of open space; and [sic]

l. The proposal must address compatibility and conformance with any overall master plans or comprehensive plans;

m. The proposal must adequately address the large building footprint criteria if applicable.

6. [sic] The proposed construction was reviewed by the Contextual Design Advisory Panel on July 31st, 2012.... Staff requests that the sidewalk abutting building B be a minimum of eight feet. Staff is continuing to work with the applicant on the design and understands that the design may continue to evolve based on Planning Commission's comments. We are recommending a condition that any outstanding changes come back to staff design review.

(Reproduced Record (R.R.) at 86–87.)[1] The zoning administrator recommended the following motion by the Planning Commission:

That the Planning Commission of the City of Pittsburgh **APPROVES** [the] Project Development Plan ... for approval of the construction of an office building with integral parking and wider site work including building pads, driveway, and intersection improvements; based on the application and drawings filed by TKA [A]rchitects on behalf of the Oakland Portal Partners, property owner, with the following conditions:

1. Any outstanding design changes be reviewed in the staff design review process.

2. Any changes to the transportation analysis be reviewed and approved by the Transportation Planner and Traffic Engineer prior to the issuance of a structural building permit.

3. The applicant agrees to fund the design and installation of the active monitoring hardware that records movement and direction at the intersection of Robinson Street and Fifth Avenue. Design

---

1. We note that Appellant's reproduced record does not include the lower case "a" following the page number as required by Pa.R.A.P. 2173.

of the equipment shall be approved by the Department of Public Works.

4. Final construction plans including final elevations, automobile parking, bike parking and site plans shall be submitted for review and approval by the Zoning Administrator prior to issuance of a structural building permit.

5. Final landscaping plans shall be submitted for review and approval by the Zoning Administrator prior to the issuance of an occupancy permit.

(R.R. at 87.)

At the March 5, 2013 hearing, Oakland Portal submitted a traffic study and an intersection redesign plan prepared by Trans Associates that proposed improvements to the intersection at Robinson Street and Fifth Avenue, the intersection located immediately across from the north entrance point to the Property, as part of its project development plan. (Trial court op. at 2; R.R. at 10, 93–140.) Cindy Jampole (Jampole), an engineer for Trans Associates, testified that at the intersection with Robinson Street, Fifth Avenue is a predominantly westbound road with an eastbound bus lane. She explained that access to the Boulevard of the Allies is significant because from there motorists can bypass downtown Pittsburgh and access Interstate 376 (the Parkway East) and both the Fort Pitt and Liberty bridges. Jampole stated that currently there is an extended right turn lane from Robinson Street onto Fifth Avenue that does not allow access onto the Boulevard of the Allies. She added that no right turns are permitted from the middle lane of the intersection so that vehicles cannot turn from Robinson Street onto Fifth Avenue to access the Boulevard of the Allies. However, Jampole noted that vehicles do make the prohibited right turn after driving through the middle lane of the intersection in order to access the Boulevard of the Allies.

Jampole said there are also vehicles that drive through the middle lane of the intersection and make illegal left turns onto Fifth Avenue into the eastbound bus lane in order to access Craft Avenue. (R.R. at 10–11.)

Jampole specifically testified that:

[T]his intersection has acquired an additional function, it's kind of a wide-open intersection, and port authority buses use this as a way by area, particularly in the afternoon when they're short routing their routes to sort of hang around here, lay over, turn around, and then head back out instead of running all the way downtown, so buses do make what essentially amounts to a U-turn when nobody's coming, and to turn back around on—Fifth Avenue.

(R.R. at 11.) Although there is a third lane at the intersection that allows traffic from Fifth Avenue to turn right onto Robinson Street, Jampole noted that the traffic from Fifth Avenue often has to dodge the parked buses. Jampole stated that Oakland Portal planned to modify the intersection to provide a bus-only lane, allowing buses to turn around in accordance with the Port Authority's request. Jampole stated that the proposed plan for the intersection would include a traffic signal that will allow for legal right turns from Robinson Street onto Fifth Avenue in order to access the Boulevard of the Allies. Jampole testified that the traffic signal will safely process Fifth Avenue traffic wanting to make a right onto Robinson Street, and will also allow bus drivers to control the traffic signal so that they can safely leave the intersection. She testified that there would be a re-striping of Fifth Avenue to add a left-turn lane on Fifth Avenue for

vehicles turning into the Property. (R.R. at 12.)

Jampole stated that the proposed intersection design provided for increased pedestrian safety by adding "push buttons, count downs, and audible pedestrian signals and crosswalks" across Robinson Street. (R.R. at 12.) Jampole testified that Oakland Portal would add signs prohibiting certain types of turns in order to promote safety at the intersection. She added that the Property's private driveway would not be used as a public street and would have pedestrian features and speed humps, elevated pedestrian crossing signage, a fifteen mile per hour speed limit, and a circuitous route, which works as a method of traffic calming. (R.R. at 12.)

Numerous objectors testified in response to the project development plan application. Wanda Wilson (Wilson), Appellant's representative, first commended the project development plan's inclusion of widened sidewalks, additional landscaping, bicycle parking, and public open space. However, she stated that the project development plan does not adequately address the neighborhood's concerns at the Robinson Street and Fifth Avenue intersection. Wilson opined that the proposed signal-controlled movement at the Robinson Street and Fifth Avenue intersection will lead to increased road usage and jeopardize the health and safety of the neighborhood. She added that if current illegal turn movements are made legal, there will be an increase of traffic for the purpose of using Robinson Street to turn onto Fifth Avenue in order to access the Boulevard of the Allies. (R.R. at 14–15.)

Carolino Giampolo (Giampolo), the founder of South Oakland Urban Living, testified that the proposed 274–car parking lot under the office building will potentially add hundreds of cars traveling on Fifth Avenue. He complained that residents will have to endure more cumbersome gridlock than they already experience when attempting to exit their neighborhood. Giampolo added that the subsequent plan for two more buildings to be constructed on the Property will add 488 more parking spots,[2] and, thus, would increase the already substantial gridlock. (R.R. at 13.)

Barbara Brewton (Brewton), a representative for the West Oakland Oak Hill Neighborhood Council, testified that the proposed project will hinder housing market stabilization and will worsen traffic problems. She requested that the entrance to the Boulevard of the Allies from Robinson Street be barricaded to prevent commuters from using Robinson Street. (R.R. at 15, 19.) Local residents Elizabeth Gray and Cynthia Kramer also expressed their belief that the proposed traffic pattern will cause more traffic congestion. (R.R. at 16–17.) Gary Willingham McClain, pastor of the Friendship Community Presbyterian Church on Robinson Street, added that the project will make it more difficult for the area to retain its residential nature. (R.R. at 17.)

The Planning Commission continued the hearing in order to give the community members and Oakland Portal additional time to meet and discuss alternative plans for the intersection and the project development plan in general. However, the

2. As noted by the zoning administrator in the development review report, the only issues before the Planning Commission were the construction of the nine-story office building and accompanying parking, as well as pads for future buildings "B" and "C." Any proposed designs of future buildings "B" and "C" were not before the Planning Commission, and will require design review and Planning Commission approval in the future. (R.R. at 86.)

Planning Commission kept the record open only for Oakland Portal to report any changes to the project development plan and closed the record for all other public comment. (R.R. at 24.)

At the April 16, 2013 hearing, Oakland Portal submitted a revised traffic study. (Trial court op. at 2; R.R. at 146–203.) Felix Cardella (Cardella), a representative from TKA Architects who worked on the project development plan, presented a revised intersection design for Robinson Street and Fifth Avenue with the only change from the first intersection design being that right turns from Robinson Street onto Fifth Avenue in order to access the Boulevard of the Allies would be prohibited, as it is currently, but that the design would still allow for traffic movement on Robinson Street. He added that this change was made in accordance with the community members' request. Cardella noted that access to Robinson Street is necessary for Oakland Portal's project to be financially feasible. (R.R. at 45.)

Patrick Roberts, a City transportation planner, testified that, prior to Oakland Portal's project development plan, the City had already made the right turn from Robinson Street onto Fifth Avenue, for the purpose of accessing the Boulevard of the Allies, illegal in order to prevent traffic congestion. Roberts noted that making a left turn from Robinson Street onto Fifth Avenue's eastbound bus lane in order to reach Craft Avenue is similarly prohibited. Roberts stated that, although previously considered, building a barricade to prevent entrance from Robinson Street onto Fifth Avenue would impede the ability for Oakland Portal to have a successful project. He also stated that Oakland Portal agreed to place monitoring equipment at the intersection in order to compile data regarding the number of cars that do not follow the traffic pattern. Roberts said that this monitoring equipment will be in place prior or to the opening of the development. He added that the data will allow Oakland Portal and the City to evaluate the traffic measures in place and to deploy police officers to the intersection at the most effective times to ensure enforcement of the traffic pattern. (R.R. at 46–47.)

Roberts testified that the plan to restripe the roads and add signs at the intersection will increase the level of motorists' awareness that they are not to drive down Robinson Street and turn right onto Fifth Avenue to access the Boulevard of the Allies. Roberts stated that he is one hundred percent in support of the revised intersection design. Robinson testified that he expects to see improvement over existing conditions at the intersection, and he added that the intersection can ultimately be redesigned if signs, signals, lane markings, monitoring, and increased law enforcement do not work. (R.R. at 46–47, 51–52.)

Brewton, whom the Planning Commission allowed to testify on behalf of the community, stated that the community opposes the right turn signal at the bottom of Robinson Street, because the community does not want any access at all from Robinson Street onto Fifth Avenue in order to reach the Boulevard of the Allies. Brewton testified that the community requests all southbound traffic on Robinson Street be diverted around the block so that the traffic will have to access Fifth Avenue further east, before reaching Robinson Street, but that the community would accept northbound traffic from the Property on Robinson Street. (R.R. at 49–50.)

Dan Wood, a representative from Councilman R. Daniel Lavelle's (Councilman Lavelle) office, read a statement prepared by Councilman Lavelle. He stated that he opposed the revised intersection plan because the illegal right turns onto Fifth

Avenue will only be increased post-development and because Robinson Street is not "suited to handle" the "high likelihood of increased traffic volume." (R.R. at 50.) Councilman Lavelle acknowledged that he is in support of the proposed monitoring equipment for the Robinson Street and Fifth Avenue intersection. (R.R. at 50.)

At the conclusion of the hearing, the Planning Commission unanimously approved the project development plan with conditions, specifically that Oakland Portal fund the design and installation of the monitoring equipment, which is to be approved by the Department of Public Works, that records the movement and the direction of traffic at the intersection of Robinson Street and Fifth Avenue. (R.R. at 52–54.)

The other conditions are that: (1) any outstanding design changes must be reviewed in the Planning Commission staff design review process, including Oakland Portal coordinating with the staff to provide a wider sidewalk along future building "B"; (2) any changes to the transportation analysis be reviewed and approved by Roberts and other transportation staff prior to the issuance of a structural building permit; (3) final construction plans, including final elevations, automobile parking, bike parking, and site plans, shall be submitted for review and approval by the zoning administrator prior to issuance of a structural building permit; (4) final landscaping plans shall be submitted for review and approval by the zoning administrator prior to the issuance of an occupancy permit; and (5) there will be no slopes on future building pads that are steep enough to require retaining walls. (R.R. at 52–54.) There is no record of an opinion or findings by the Planning Commission.[3] Appellant appealed to the trial court.

■ By opinion and order dated February 25, 2014, the trial court correctly stated that, where it takes no additional evidence, its scope of review is limited to determining whether the Planning Commission committed an error of law, abused its discretion, or made findings not supported by substantial evidence. The trial court also stated that the Planning Commission correctly determined that Oakland Portal met the traffic criteria found in the Zoning Code, specifically citing Zoning Code section 922.10.E.2(d) and (e).[4] Citing

---

3. We note that there is no language in Zoning Code section 922.10, Zoning Code, § 922.10, the section governing project development plans, requiring the Planning Commission to issue a written decision. Zoning Code section 922.10.E, Zoning Code, § 922.10.E, states that the Planning Commission is only to approve a project development plan if it finds that the plan meets all of the thirteen criteria listed in Zoning Code section 922.10.E.2(a)-(m). In comparison, Zoning Code sections 922.07.C, governing special exceptions, and 922.09.D, governing variances, Zoning Code, §§ 922.07.C, 922.09.D, provide that the Board of Adjustment must issue a decision within forty-five days with "stated findings of fact." Id.

4. This section states as follows:
In reviewing applications for Project Development Plan approval, the Planning Commission shall consider the extent to which the Project Development Plan addresses the following criteria. The Planning Commission shall not approve any Project Development Plan that, in the determination of the Planning Commission, does not adequately address one (1) or more of these criteria in accordance with objectives contained in general or site specific policy documents adopted by the Planning Commission.

\* \* \*

(d) The proposed development must adequately address traffic generation characteristics in relation to street capacity, intersection classification, and existing and projected traffic volumes and address reasonable alternatives that would enable increased traffic to be directed away from congested areas;
The proposed development must adequately address pedestrian traffic genera-

*Appeal of O'Hara,* 389 Pa. 35, 131 A.2d 587 (1957), and *Tuckfelt v. Zoning Board of Adjustment of the City of Pittsburgh,* 80 Pa.Cmwlth. 496, 471 A.2d 1311 (1984), for the proposition that objectors must present evidence beyond mere speculation of harm, the trial court determined that the objectors failed to present such concrete evidence of harm from increased traffic at the intersection that would be detrimental to the health, safety, and general welfare of the surrounding community. Thus, the trial court affirmed the Planning Commission's decision. The trial court also determined that Appellant's appeal was not frivolous or initiated for the purposes of delay, because Appellant challenged the sufficiency of the evidence relied on by the Planning Commission. Accordingly, the trial court denied Oakland Portal's request for counsel fees, costs, and damages.

### Discussion

On appeal to this Court, Appellant raises the questions of whether the trial court erred in not determining the burden of proof for a project development plan application and whether the Planning Commission abused its discretion in determining that Oakland Portal met the standards for project development plan approval.

### Burden of Proof for Project Development Plans

■ Appellant first argues that the trial court erred in not analyzing whether Oakland Portal met its burden of proof, suggesting that the trial court's opinion is insufficient for appellate review. Where, as here, a trial court takes no additional evidence, our scope of review is limited to

---

tion, proposed pedestrian circulation facilities and patterns, including, but not limited to, provision for adequate sidewalk capacity on and off site, provision for appropriate pedestrian safety on and off site, and provision for pedestrian cir-

determining whether the Planning Commission abused its discretion or committed an error of law. *Zoning Hearing Board of Sadsbury Township v. Board of Supervisors of Sadsbury Township,* 804 A.2d 1274, 1278 n. 6 (Pa.Cmwlth.2002). Thus, it is the Planning Commission's decision that we review.

■ Contrary to Appellant's assertion, the issue of Oakland Portal's burden of proof in a project development plan hearing before the Planning Commission is not one of first impression. Our Supreme Court stated that the burden is on a project development plan applicant to submit evidence that shows the project development plan meets the Zoning Code's criteria as follows:

Under [Zoning Code] Section 922.10.C, all applicants for project development plan approval are to file an application with the Zoning Administrator. [Zoning Code,] §§ 922.10.C, 922.10.D.1.... The Planning Commission reviews the master development plan application and approves it, if it meets certain designated criteria. *Id.* When the requirements of master development plan review have been fulfilled, the Zoning Administrator schedules review of the project development plan application before the Planning Commission. [Zoning Code,] § 922.10.E.1. The Planning Commission then holds a public hearing, *reviews the project development plan application to determine whether it complies with thirteen designated criteria,* and either approves, approves with conditions, or denies the application. [Zoning Code,] §§ 922.10.E.1, 922.10.E.2.

---

culation patterns which do not substantially alter existing patterns and which enhance desired patterns where possible[.]

Zoning Code, § 922.10.E.2(d), (e).

*Riverlife Task Force v. Planning Commission of City of Pittsburgh,* 600 Pa. 378, 966 A.2d 551, 553–54 (2009) (emphasis added). Accordingly, Oakland Portal bore the burden of providing sufficient evidence for the Planning Commission to approve the project development plan, and this burden of proof was properly applied by the Planning Commission in approving the project development plan and by the trial court in reviewing the Planning Commission's approval.

### Burden of Proof for Health, Safety, and General Welfare

■ Appellant also argues that the issue of which party has the burden of proof concerning whether a project development plan adversely affects a community's health, safety, and morals is an issue of first impression in this Court, and, as with cases involving special exceptions, the burden of proof resides with the objectors to show that a project development plan is detrimental to the health, safety, and morals of the community. *See Bray v. Board of Adjustment,* 48 Pa.Cmwlth. 523, 410 A.2d 909, 911 (1980) ("[H]ence it is logical that ... the Pennsylvania decisions have placed on the objectors the 'burden' of showing the proposal to be detrimental to public health, safety and welfare."). Appellant correctly asserts that this issue is one of first impression in this Court, and we find Appellant's argument persuasive that, similar to the burden of proof with special exceptions, Oakland Portal's burden of proof involves submitting evidence that demonstrates it meets the Zoning Code's criteria, while Appellant carries the burden of demonstrating that the project development plan would be detrimental to the health, safety, and general welfare of the surrounding community.

■ Special exceptions are approved so long as they meet a zoning ordinance's enumerated criteria. *Bray,* 410 A.2d at 911 ("The important characteristic of a special exception is that it is a conditionally permitted use, legislatively allowed if the standards are met.") If an applicant meets the requirements for a special exception, there is a presumption that the application is consistent with the "promotion of health, safety and general welfare." *Id.* "[H]ence[,] it is logical that ... the Pennsylvania decisions have placed on the objectors the 'burden' of showing the proposal to be detrimental to public health, safety and welfare." *Id.*

Similar to special exception applications, project development plan applications are approved if all of a zoning ordinance's requirements are met, *Riverlife,* and these criteria are also presumptively compatible with the advancement of the public's health, safety, and general welfare. *Bray.* Thus, it follows that the same burden on objectors for special exception applications to prove that a special exception would be detrimental to the health, safety, and general welfare of the public would apply with project development plan applications. *Bray.*

At both hearings, the Planning Commission afforded Appellant and the other objectors the opportunity to present evidence demonstrating that Oakland Portal's project development plan was detrimental to the community. The Planning Commission did not find this evidence persuasive and thus properly determined that Oakland Portal carried its burden of demonstrating that it met all of the Zoning Code requirements when the Planning Commission approved the project development plan. Moreover, the Planning Commission never improperly placed the burden of proof regarding the health, safety, and general welfare of the community on Oakland Portal. The merits of the case involve whether Oakland Portal satisfied the

requirements for project development plan approval, and we now address that issue.

### Zoning Code Standards for Project Development Plan Approval

Appellant contends that Oakland Portal did not meet its burden of proving that it met the requirements of the Zoning Code for project development plan approval. Specifically, citing *Elizabethtown/Mt. Joy Associates, L.P. v. Mount Joy Township Zoning Hearing Board*, 934 A.2d 759 (Pa. Cmwlth.2007), Appellant argues that the Planning Commission erred in determining that Oakland Portal has satisfied the Zoning Code project development plan requirements concerning traffic and pedestrians.

In relevant part, Zoning Code section 922.10.E.2 provides as follows:

In reviewing applications for Project Development Plan approval, the Planning Commission shall consider the extent to which the Project Development Plan addresses the following criteria. The Planning Commission shall not approve any Project Development Plan that, in the determination of the Planning Commission, does not adequately address one (1) or more of these criteria in accordance with objectives contained in general or site specific policy documents adopted by the Planning Commission.

\*     \*     \*

(b) The proposed development must address compatibility with any existing residential area, including provision for maintenance of residential uses in existing residential areas;

(c) The proposed development must make provision for adequate parking, considering available transit alternatives and support services, and make provision for adequate vehicle access and loading areas in relation to street capacity, functional classification, and land use patterns, such that any vehicular access points do not create congestion on public streets or create hazardous conditions for pedestrians;

(d) The proposed development must adequately address traffic generation characteristics in relation to street capacity, intersection classification, and existing and projected traffic volumes and address reasonable alternatives that would enable increased traffic to be directed away from congested areas;

(e) The proposed development must adequately address pedestrian traffic generation, proposed pedestrian circulation facilities and patterns, including, but not limited to, provision for adequate sidewalk capacity on and off site, provision for appropriate pedestrian safety on and off site, and provision for pedestrian circulation patterns which do not substantially alter existing patterns and which enhance desired patterns where possible[.]

Zoning Code, § 922.10.E.2(b)-(e).

In *Elizabethtown/Mt. Joy Associates,* the zoning hearing board denied a developer's application for a special exception because the application failed to satisfy the requirements of the zoning ordinance. The zoning hearing board determined that the application for a special exception lacked the necessary specificity, citing inadequacies in overall planning and a lack of evidence regarding architectural style, signage, and lighting requirements. The developer appealed to the common pleas court, which affirmed the zoning hearing board's order.

On appeal to this Court, we noted that an applicant must meet the express standards and criteria found in a zoning ordinance in order for a special exception to be

granted. We determined that the zoning hearing board did not err or abuse its discretion in denying the special exception application, because: (1) there was no final plan establishing the architectural features of the building; (2) signage had not been finalized in accordance with the zoning ordinance requirements; (3) there was not substantial evidence demonstrating that traffic would be controlled in a safe and efficient manner; and (4) the developer failed to submit evidence to satisfy the zoning ordinance's lighting requirements. Thus, we affirmed the trial court's order.

■ Unlike the special exception application submitted in *Elizabethtown/Mt. Joy Associates,* as noted by the trial court, the record before the Planning Commission supports the finding that Oakland Portal's project development plan met the Zoning Code's requirements for approval. Specifically, Oakland Portal presented evidence regarding its plan to accommodate any vehicular and pedestrian traffic that develops as a result of the project. Importantly, in addition to the witnesses' testimony summarized above, Oakland Portal presented traffic studies to show the effects of the project development plan on traffic congestion, as well as a redesign plan for the Robinson Street and Fifth Avenue intersection intended to accommodate any increase in vehicular and pedestrian traffic. Contrary to Appellant's assertion that the traffic studies reveal that the project development plan will increase traffic congestion, the Planning Commission accepted Oakland Portal's traffic studies in determining that Oakland Portal has adequately accommodated traffic concerns in its design changes.[5]

The record evidence includes traffic studies, intersection redesign plans, and witness testimony, which the Planning Commission found was sufficient to meet the requirements of the Zoning Code. In approving the project development plan at the conclusion of the April 16, 2013 hearing, the Planning Commission found that the project development plan met all of the Zoning Code's requirements found in section 922.10.E.2 of the Zoning Code. Relevant to this appeal, by approving the project development plan, the Planning Commission effectively concluded that the project development plan addresses vehicle access and congestion and alleviates current hazardous conditions for pedestrians in order for the area to maintain its residential nature; adds a traffic signal, more signage, and vehicle monitoring equipment to help with traffic flow and the enforcement of changed and existing traffic patterns at the intersection; and accommodates pedestrian traffic, adding features that make the intersection safer for pedestrians. Zoning Code, § 922.10.-E.2(b)-(e).

The trial court affirmed the Planning Commission's approval, stating that "Oakland Portal's traffic study addressed all of the required criteria and was approved by the Department of City Planning and the Department of Public Works." (Trial court op. at 3.) As with the trial court's review, our scope of review is also narrow in determining only whether the Planning Commission abused its discretion or committed an error of law.

In making its determination, the Planning Commission also reviewed the zoning administrator's development review report. The zoning administrator found that the

---

5. Oakland Portal submitted the traffic studies to support its assertion that the intersection design would not have a detrimental impact on traffic. The Planning Commission approved the project development plan after reviewing the testimony and evidence, which included the traffic studies submitted by Oakland Portal.

application includes the construction of pads for a future building "B" (for office and parking) and a future building "C" (for office, hotel, and parking), as well as the proposal for the construction of the nine-story office building with accompanying parking. Future buildings "B" and "C" will require design review and Planning Commission approval; however, the zoning board of adjustment granted variance and special exception for height and variances for reduced setbacks for all of the proposed building sites on the Property. (R.R. at 86.) The zoning administrator noted that all of the thirteen criteria found in Zoning Code section 922.10.E.2 that a project development plan applicant must meet for approval had been met by Oakland Portal. (R.R. at 86–87.) Accordingly, the zoning administrator recommended that "[t]he Planning Commission … AP-PROVES [the] Project Development Plan … for approval of the construction of an office building with integral parking and wider site work including building pads, driveway, and intersection improvements; based on the application and drawings filed by TKA [A]rchitects on behalf of [Oakland Portal]." (R.R. at 87.) The zoning administrator recommended that the project development plan be approved with conditions, notably that Oakland Portal fund the design and installation of the traffic monitoring equipment at the intersection. (R.R. at 87.)

■ Having reviewed this report and the evidence in light of the Zoning Code's criteria, the Planning Commission approved the project development plan, finding that Oakland Portal met its burden of proving that the project development plan satisfied all of the Zoning Code's criteria. Moreover, Oakland Portal has a right to develop the property that it owns in accordance with reasonable governmental regulation. *See Appeal of Lord,* 368 Pa. 121, 81 A.2d 533, 535 (1951) ("[A property owner has] a right to use his own [property] in any way he desires, provided he does not (1) violate any provision of the Federal or State Constitutions; or (2) create a nuisance; or (3) violate any covenant, restriction or easement; or (4) violate any laws or zoning or police regulations which are constitutional.").

The trial court also noted that Appellant failed to submit its own traffic study or data demonstrating that the project development plan and the revised intersection design would cause undue traffic congestion that would affect the health, safety, and general welfare of the community. For this proposition, the trial court cites *Appeal of O'Hara,* which is a case involving a special exception request and states as follows:

> It is not any anticipated increase in traffic which will justify the refusal of a 'special exception' in a zoning case. The anticipated increase in traffic must be of such character that it bears a substantial relation to the health and safety of the community. A prevision of the effect of such an increase in traffic must indicate that not only is there a likelihood but a high degree of probability that it will affect the safety and health of the community, and such prevision must be based on evidence sufficient for the purpose. Until such strong degree of probability is evidenced by legally sufficient testimony no court should act in such a way as to deprive a landowner of the otherwise legitimate use of his land.

*Appeal of O'Hara,* 131 A.2d at 596. The trial court found that the Planning Commission properly determined that Oakland Portal carried its burden of proof. In approving the project development plan application, the Planning Commission did not find that Appellant's or the other objectors' evidence was sufficient to demon-

strate that Oakland Portal did not satisfy the Zoning Code's criteria or that the project development plan would be detrimental to the community, which is the objectors' burden to carry.

We do not discount the objectors' testimony, and, while the objectors are not required to produce their own traffic study or even present any evidence in rebuttal concerning whether Oakland Portal has met the Zoning Code's requirements for a project development plan, *Riverlife,* based on the record before the Planning Commission, we cannot say that the Planning Commission abused its discretion or committed an error of law in determining that Oakland Portal produced sufficient evidence demonstrating that all of the Zoning Code's criteria had been met when it approved the project development plan.[6]

Accordingly, we affirm.

### *ORDER*

AND NOW, this 9th day of January, 2015, the February 25, 2014 order of the Allegheny County Court of Common Pleas is affirmed.

---

**6.** However, we are offering no opinion as to the propriety of the intersection redesign plan.