IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Lumania Properties, L.P., | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| Planning Commission of the | : | |
| City of Pittsburgh, Troiani Group, | : | |
| Troy Development Associates, L.P., | : | |
| Boulevard & Market, LLC and | : | No. 531 C.D. 2021 |
| City of Pittsburgh | : | Argued: February 7, 2022 |


BEFORE:   HONORABLE ANNE E. COVEY, Judge
                    HONORABLE ELLEN CEISLER, Judge
                    HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                                    FILED:  May 17, 2022


Lumania Properties, L.P. (Lumania) appeals from the Allegheny County Common Pleas Court's (trial court) April 14, 2021 order affirming the City of Pittsburgh (City) Planning Commission's (Commission) July 14, 2020 decision that approved the consolidation of 12 parcels owned by Troiani Group and Troy Development Associates, L.P. (collectively, Troiani).  Lumania presents three issues for this Court's review: whether the Commission erred (1) by approving the Consolidation Plan because the Consolidation Plan did not identify a light access setback adjacent to its building consistent with the City's Subdivision Regulations

and Standards[1] (Subdivision Regulations);[2] (2) by determining that a subdivision plan need not contain setback lines, required open space, and correct adjacent building densities as required by the City's Subdivision Regulations; and (3) by concluding that the Subdivision Regulations had been repealed.[3]

The instant appeal pertains to Troiani's plan to consolidate 12 parcels of its properties located on Market Street between First Avenue and Boulevard of the Allies in the Golden Triangle (GT)-C District[4] into 2 lots (Consolidation Plan). Proposed Lot 1 would have 150.46' of frontage on First Avenue, 162.5' of frontage on Boulevard of the Allies, and 159.6' of frontage on Market Street. Proposed Lot 1 would total 24,971 square feet in area, and currently contains several commercial buildings.[5] Proposed Lot 2 would have 34' of frontage on Market Street, and 70.2'

---

[1] *See* https://apps.pittsburghpa.gov/redtail/images/3078_SUBDIVISION_REGULATIONS_AND _STANDARDS.pdf (last visited May 16, 2022). Pursuant to Section 9 of the Act of May 13, 1927, P.L. 1011, *as amended*, 53 P.S. § 22769 (Act), the Commission has jurisdiction and authority to approve "a subdivision of land," which is defined therein as "[a]ny division of land into lots or parcels, two or more in number, by the owner thereof for the purpose of improvement or sale, for residential, commercial, industrial or similar use[.]" *Id*. Section 10 of the Act directs the Commission to "adopt general regulations governing the subdivision of land within its jurisdiction." 53 P.S. § 22770.

[2] This Court has rephrased Lumania's issue to correlate with, and as fairly suggested by, the argument section of its brief. *See* Pa.R.A.P. 2116(a). Lumania phrased the issue as follows: "Whether the Commission . . . abused its discretion or committed an error of law in . . . [c]oncluding that the Subdivision Regulations . . . are inconsistent and inapplicable in creating a plat within the City . . . ." Lumania Br. at 3.

[3] This Court has reordered Lumania's issues for ease of discussion.

[4] The GT District is divided into five subdistrict classifications – Subdistricts A, B, C, D, and E. *See* City of Pittsburgh, Pa. Zoning Code § 910.01.B. References herein to the GT District refer to all GT Subdistricts.

[5] Troiani previously sought the Commission's approval for the demolition of some of the buildings on proposed Lot 1, but the Commission denied Troiani's application. This Court affirmed the trial court's affirmance of the Commission's decision. *See Troiani Grp. & Troy Dev. Assocs., L.P. v. City of Pittsburgh Planning Comm'n, City of Pittsburgh & Lumania Props., L.P.* (Pa. Cmwlth. No. 85 C.D. 2021, filed Mar. 21, 2022), *petition for allowance of appeal filed*, (Apr. 20, 2022). In addition, this Court reversed the trial court's reversal of the City Board of Appeals'

of frontage on Boulevard of the Allies. Proposed Lot 2 would total 2,392 square feet in area, and currently contains a surface parking lot.

Lumania owns a six-story building at 216 Boulevard of the Allies which is adjacent to the Consolidation Plan site, and which has windows on the third through sixth floors that face the property line that the Consolidation Plan site would border. The Consolidation Plan reflects that there is no existing building on the Consolidation Plan site immediately adjacent to Lumania's building.[6] By July 13, 2020 email to the Commission, Lumania objected to the proposed consolidation. Lumania also submitted to the Commission an "Objection to Lot Consolidation Plan" (Plan Objection), Reproduced Record (R.R.) at 18a-21a, wherein Lumania alleged that the Consolidation Plan did not comply with Section 4.10.3 of the City's Subdivision *Ordinance's*[7] requirements pertaining to light access (Subdivision Light Access Requirements).[8, 9] Lumania requested that the Commission deny the Consolidation Plan for the following reasons:

---

denial of a proposed emergency demolition plan for one building on proposed Lot 1 (requesting preemptive demolition of other buildings). *See Troiani Grp. & Troy Dev. Assocs., L.P. v. City of Pittsburgh Board of Appeals & City of Pittsburgh* (Pa. Cmwlth. No. 1127 C.D. 2021, filed Mar. 21, 2022), *petition for allowance of appeal filed*, (Apr. 20, 2022).

[6] In fact, Lumania stated to the Commission that Troiani had previously demolished the building at 212-214 Boulevard of the Allies. *See* Reproduced Record at 40a. In its brief to this Court, Lumania stated: "The building which formerly abutted [Lumania's] structure was a low-rise building which did not affect the windows on [Lumania's] structure." Lumania Br. at 6.

[7] It appears that Lumania's numerous references to the Subdivision *Ordinance* in the Plan Objection were intended to be references to the Subdivision *Regulations*. In its brief to this Court, Lumania correctly references the Subdivision *Regulations*.

[8] Section 4.10.3 of the Subdivision Regulations states in relevant part: "A minimum distance between **structures** shall be provided in accordance with the City's Building Code, and in conformance with the following provisions for light access to all structures." Subdivision Regulations § 4.10.3, R.R. at 33a (emphasis added).

[9] Lumania claimed:

> 5. Pursuant to [S]ection 4.10.3 of the [Subdivision Regulations], lots
> must comply with the [Subdivision] Light Access [Requirements]

7. **The [Consolidation Plan]** . . . **is deficient in that at the lot line between the proposed new lot and [Lumania's property], the variable setback** (**for light access**) **as required by [Section] 4.10.3 of the [S]ubdivision [Regulations] is erroneously not noted**.

8. The Subdivision [Regulations] of the City [] also require[] that lot plans shall conform to the [City of Pittsburgh, Pa.] Zoning [Code[10] (Zoning Code)] and not be detrimental to any property.

9. The [Consolidation Plan] . . . in addition to being deficient and not identifying the variable setback required for subdivision light access, also does not comply with the Light Access [R]equirements pursuant to [Section] 910.01.C.5 of the Zoning [Code[11] (Zoning Light

---

in which light access of an affected window requires an arc extending 70 [degrees] on each side of the line perpendicular to the building wall at the centerline of any affected window. The exterior radii of the arc [are] required to be 20 feet in length for non-residential uses. (§ 4.10.3(a)(2).

6. The Subdivision [Regulations] in [Section] 4.10.3 include[] illustrations which clearly indicate that the height above a window sill of an affected adjacent window can only be two-thirds of the setback distance **between the structures**. . . .

R.R. at 20a (emphasis added).

[10] *See* https://library.municode.com/pa/pittsburgh/codes/code_of_ordinances?nodeId=PIZOCO_TITNINEZOCO (last visited May 16, 2022).

[11] Section 910.01.C.5 of the Zoning Code, which pertains to the GT District, is titled "[l]ight [a]ccess," and provides:

Buildings shall be designed to provide at least five (5) feet from the zoning lot line to a proposed affected window except when the zoning lot line is contiguous to a public right-of-way of ten (10) or more feet in width. An affected window is defined as a window that provides light, air and visibility to the outdoors not including glazing for architectural design. The five-foot space may be waived when a similar amount of open space is provided on the adjacent property with a recorded easement or similar type of document.

Zoning Code § 910.01.C.5.

4

Requirements)], and is detrimental to [Lumania's adjacent property].

R.R. at 20a-21a (emphasis added).

On July 14, 2020, the Commission held a hearing on Troiani's Consolidation Plan, at which Lumania's owner Jay Green (Green), Lumania's counsel Steve Farino (Farino), Troiani's counsel Cliff Levine (Levine), and City Zoning Administrator Corey Layman (Layman) testified. Green stated his objection to the Consolidation Plan based on his opinion that Troiani's proposed building is contrary to the community's best interests. Specifically, Green declared:

> [Granting Consolidation Plan approval] would erase the chance to keep aspects of [d]owntown Pittsburgh diverse, both in its people and in its architecture.
>
> Besides, you know, another glass tower with expensive [condominiums] and higher-priced restaurants is not in keeping with the attitude and desires of the current culture.
>
> Attracting forward-thinking companies and residents to [the City] will require an honest environment that represents a true blend of old and new neighborhood styles, shops, and eateries. That is how we will activate this area.
>
> . . . . To keep those lots separate and to develop those [sic] each individual lot with townhouses and -- and correct buildings for this neighborhood . . . is exactly what we need, not a giant glass tower and -- and the lip service to hiding a salvaged brick or a board in some glass monstrosity. You know, that's no [sic] keeping the past.

R.R. at 41a-42a.

Farino claimed that "the [Consolidation] [P]lan . . . is deficient in that it does not have a -- a variable setback for light access for the neighboring property that has windows which [] [S]ubdivision [Regulation] Section 4[.]10.3

5

requires . . . [.]"[12]  R.R. at 43a.  Levine countered that "this is just a consolidation which the [Planning Commission] staff has recommended. . . .  [I]f there's an issue about whether the building will be too close to their windows, I think that waits to the next [project development plan][.]"  R.R. at 44a.

In response to questions from Commissioner Rachel O'Neill (Commissioner O'Neill), Layman explained that the Subdivision Light Access Requirements are not applicable because the Consolidation Plan does not involve development.  Layman confirmed that "the [S]ubdivision [R]egulations are regulations that at one time were adopted by the . . . [C]ommission."  R.R. at 46a. Layman further stated that, to the extent that the Subdivision Regulations are inconsistent with the Zoning Code, the Zoning Code would "absolutely" override those.  *Id.*  Commissioner O'Neill then asked Layman: "So if there are setbacks in the [Z]oning [C]ode, those would override or take precedence over anything included in the [S]ubdivision [R]egulations?"  *Id.*  Layman responded: "That is correct."  *Id.*

At the hearing's conclusion, the Commission voted unanimously to approve the Consolidation Plan.  *See* R.R. at 48a-49a.  In its written decision, the Commission made eight findings of fact and four conclusions of law.  The Commission concluded, in pertinent part, as a matter of law:

> 1. The proposed [Consolidation Plan] does not change the underlying zoning or historic designations of the [s]ubject [p]roperty.  Future development will be subject to applicable zoning regulations.

---

[12] In the Plan Objection, Lumania raised only that Troiani failed to comply with the Subdivision Light Access Requirements "at the lot line between the proposed new lot and [Lumania's property]," and the Zoning Code Light Requirements, and that the Consolidation Plan was detrimental to its neighboring property.  R.R. at 20a.

6

2. The Commission concludes that the [Consolidation Plan] is in keeping with the general character of the surrounding neighborhood as defined in Section 1.1[-10.0], of the Subdivision Ordinance,[13] and will not cause negative impacts in the surrounding neighborhood.

3. The Commission concludes that the [Consolidation Plan] will provide adequate light, air, and privacy[,] and will not cause undue overcrowding or congestion.

R.R. at 26a. Lumania appealed to the trial court, which, on April 14, 2021, affirmed the Commission's decision. Lumania appealed to this Court.[14]

Lumania argues that the Commission erred when it approved the Consolidation Plan, because the Consolidation Plan did not identify a light access setback adjacent to its building consistent with the Subdivision Regulations' Subdivision Light Access Requirements.[15] Specifically, Lumania contends that a light access setback constitutes open space which must be identified in a site plan, and Troiani's failure to identify the light access setback adjacent to its building renders the Consolidation Plan defective.

---

[13] The Commission, in its July 14, 2021 decision, referred to the Subdivision Regulations both as the "[S]ubdivision [R]egulations" and the "Subdivision Ordinance[.]" R.R. at 25a-26a.

[14] "Where, as here, a trial court takes no additional evidence, our scope of review is limited to determining whether the [] Commission abused its discretion or committed an error of law. Thus, it is the [] Commission's decision that we review." *Oakland Plan. & Dev. Corp. v. City of Pittsburgh Plan. Comm'n*, 107 A.3d 873, 881 (Pa. Cmwlth. 2015) (citation omitted).

[15] The Subdivision Regulations govern the subdivision of land within the City. *See* Section 10 of the Act of May 13, 1927, P.L. 1011, *as amended*, 53 P.S. § 22770. This Court has held that "[w]here a subdivision plan complies with all objective provisions of the applicable subdivision ordinance[,] as well as all other applicable regulations[,] the plan must be approved." *Robal Assocs., Inc. v. Bd. of Supervisors of Charlestown Twp.*, 999 A.2d 630, 635 (Pa. Cmwlth. 2010) (quoting *Shelbourne Square Assocs., L.P. v. Bd. of Supervisors of Twp. of Exeter*, 794 A.2d 946, 950 (Pa. Cmwlth. 2002)).

7

Section 2.27 of the Subdivision Regulations defines *Subdivision Site Plan* as:

> [A] drawing or map prepared by a registered land surveyor or engineer which illustrates precisely the lot or lots to be subdivided and all land within one hundred (100) feet of the proposed subdivided area. **The subdivision site plan shall contain** but shall not be limited to, the following information: the location and bulk of all buildings, the location of all roads, vehicular and pedestrian, utility easements location and points of access; **required building setback lines**; **required open space of any kind**; and any major natural features on the site including, but not limited to, hillsides in excess of fifteen percent (15%) slope, natural water courses and drainage areas and existing trees in excess of 30" in caliper.

Subdivision Regulations § 2.27, R.R. at 30a (emphasis added).

The Subdivision Light Access Requirements provide, in relevant part:

> 4.10.3 Light Access. A minimum distance **between structures** shall be provided in accordance with the City's Building Code, and in conformance with the following provisions for light access to all structures.
>
> a) Area for light access shall be that area enclosed by:
>
> > 1) An arc extending seventy degrees on each side of a line perpendicular to building wall at the center line of any affected window, and
> >
> > 2) The exterior radii of such arc which shall be forty feet in length for residential uses and twenty feet in length for other ma[i]n uses.
>
> The radii arc shall be measured from the exterior face of the building wall at sill level at the center line of the affected window. For this purpose, when a sill is less than two and one-half feet above floor level, sill level shall be assumed to be two and one-half feet above floor level.

8

. . . .

    c) Requirements for light access.

        1) For all affected windows in all buildings, at least eight units of light access and the space between such units; and the affected window shall be unobstructed.

Subdivision Regulations § 4.10.3, R.R. at 33a.

Lumania asserts that Section 2.27 of the Subdivision Regulations' requirement that a subdivision plan contain "required open space of any kind" encompasses the Subdivision Light Access Requirements. R.R. at 30a; *see also* Lumania Br. at 12. Thus, Lumania declares:

> The lot [C]onsolidation [P]lan . . . was deficient, in that at the lot line between the proposed new lot and 216 Boulevard of the Allies, the variable setback (for light access) as required by [the Subdivision Light Access Requirements], is erroneously not noted.

Lumania Br. at 14. Lumania reasons that the Subdivision Regulations, including the Subdivision Light Access Requirements, are *subdivision* requirements and thus, apply to consolidations.[16] In addition, Lumania contends that the Consolidation Plan must also comply with the Zoning Code's light access requirements, which Lumania asserts it did not.

This Court has distinguished zoning applications and subdivision plans as follows:

> [A] zoning application "addresses the use of the land, while **a subdivision plan addresses how the land is to be developed**." *Philomeno* [*& Salamone v. Bd. of Supervisors of Upper Merion Twp.*], 966 A.2d [1109,] 1110 [(Pa. 2009)]. "While the governing body of a

---

[16] Lumania acknowledges that "[the] Subdivision Regulations . . . apply to the creation of lots, and the [Z]oning [Code] [is] for the creation of buildings and uses." Lumania Br. at 15.

9

municipality has broad discretion in adopting standards for the approval of subdivision and land development plans, it cannot include provisions relating to the use of land. Regulation of use is a matter appropriate for control through a zoning ordinance." *Id.* (quoting 2 Robert M. Anderson, Law of Zoning in Pennsylvania § 22.20 (1982)).

*Bd. of Comm'rs of Cheltenham Twp. v. Hansen-Lloyd, L.P.*, 166 A.3d 496, 504-05 (Pa. Cmwlth. 2017), *aff'd*, 211 A.3d 845 (Pa. 2019) (emphasis added). Further, "approval of a final [subdivision] plan does not extend to any zoning approvals needed to effect the development[.]" *Rickert v. Latimore Twp.*, 960 A.2d 912, 918-19 (Pa. Cmwlth. 2008); *see also Stolz v. Zoning Hearing Bd. of the Borough of Lewisburg*, 568 A.2d 746, 748 (Pa. Cmwlth. 1990).

Troiani rejoins that because the Zoning Light Requirements address light access for **buildings** in the GT District, light access is a zoning matter to be addressed when a development plan is considered, and not a matter for consideration in a consolidation plan application approval.[17] The Commission and the City (collectively, City Appellees) argue that "a lot consolidation on its own causes no changes to property in either the physical or regulatory realm[,]" and there is no record evidence of any harm resulting from the Consolidation Plan's approval. City Appellees' Br. at 9.

This Court agrees with Lumania that the Subdivision Regulations apply to subdivision plans, including the instant Consolidation Plan. However, the Commission did not conclude otherwise. *See* R.R. at 26a (wherein the Commission

---

[17] Troiani emphasizes that the Consolidation Plan provides only lot consolidation, and Troiani has not sought approval for any construction at the site. Troiani maintains that the Commission was required to approve the Consolidation Plan since "zoning and other structural development requirements do ***not*** apply to lot consolidations because consolidations do ***not*** constitute development." Troiani Br. at 12.

10

"conclude[d] that the [Consolidation Plan] is in keeping with the general character of the surrounding neighborhood as defined in Section 1.1, et seq., **of the Subdivision [Regulations**.]") (emphasis added).

By their own terms, the Subdivision Light Access Requirements mandate "a minimum distance **between structures** . . . ." Subdivision Regulations § 4.10.3, R.R. at 33a (emphasis added). The Consolidation Plan identifies the location of Lumania's structure, and as the Consolidation Plan reveals, and Lumania acknowledges, there is no existing structure adjacent to Lumania's building. Absent an existing adjacent structure on the proposed consolidated site, the applicable Subdivision Light Access Requirements setback cannot be calculated, and thus the lack of such notation on the Consolidation Plan was not a deficiency. Moreover, because the matter before this Court does not involve zoning, the Zoning Light Requirements are not relevant to this Court's decision herein. Accordingly, the Consolidation Plan was not deficient.[18]

Lumania next contends that the Commission erred by "[c]oncluding that a [s]ubdivision [p]lan need not contain setback lines, required open space, and correct adjacent building densities, as required by the Subdivision Regulations . . . ." Lumania Br. at 7. The Commission made no such conclusion, and nothing in the Commission's decision holds that "a [s]ubdivision [p]lan need not contain setback lines, required open space, and correct adjacent building densities[.]" *Id*. Rather,

---

[18] With respect to Lumania's claim that the Consolidation Plan's approval would be detrimental to its property, Lumania's Plan Objection contains no support therefor other than asserting that the Consolidation Plan does not comply with the Subdivision Light Access Requirements and the Zoning Light Requirements. At the Commission hearing, Lumania's owner argued only that preserving the existing buildings would be better for the City, but made no argument about specific detriment to Lumania from the Consolidation Plan Approval. Lumania's attorneys did not address any detrimental effect to Lumania.

11

the Commission simply approved the Consolidation Plan. Thus, Lumania's argument fails.

Finally, Lumania argues that the Commission erred by "concluding that the Subdivision Regulations . . . had been repealed, even though they are still in full force and effect[.]" Lumania Br. at 16. However, the Commission did not conclude that the Subdivision Regulations had been *repealed*, and nothing in the Commission's decision holds or otherwise declares that the Subdivision Regulations had been repealed. In Finding of Fact 8, the Commission found **that Layman explained** that the Subdivision Light Access Requirements do not apply to consolidations since a consolidation plan does not involve development as considered in the Subdivision Regulations, and that the relevant Subdivision Regulations had been superseded by Zoning Code amendments. *See* R.R. at 25a. Nonetheless, the Commission did **not** render a legal conclusion declaring that the Subdivision Regulations had been repealed and did not denote such as the basis for its decision. Accordingly, Lumania's contention is meritless. This Court therefore, concludes that the Commission did not err when it approved the Consolidation Plan.[19]

---

[19] City Appellees contend that the present appeal is not ripe because, "[e]ven though no new development has yet been formally proposed, Lumania asserts that the [C]onsolidation [P]lan fails to account for the impact on light, space, and design of hypothetical future development." City Appellees Br. at 7; *see DeNaples v. Pa. Gaming Control Bd.*, 150 A.3d 1034, 1040 (Pa. Cmwlth. 2016) ("[A]n action 'may not be employed to determine rights in anticipation of events which may never occur . . . or as a medium for the rendition of an advisory opinion which may prove to be purely academic.' [*Brown v. Pa. Liquor Control Bd.*, 673 A.2d 21, 23 (Pa. Cmwlth. 1996)]." "An issue that 'may' arise in the future 'is not considered 'ripe' for judicial interpretation.' *Id*. (citation omitted).").

This Court disagrees with City Appellees' characterization of the dispute. The Commission issued a decision granting approval of the Consolidation Plan. Lumania has challenged the Commission's approval. It does so on the grounds that the Commission's decision is erroneous because the Consolidation Plan is legally inadequate. Accordingly, with respect to

For all of the above reasons, the trial court's order is affirmed.



ANNE E. COVEY, Judge

---

Lumania's challenge to Troiani's compliance with the Subdivision Regulations, Lumania is not seeking "to determine rights in anticipation of events which may never occur" but, rather, whether the Commission properly approved the Consolidation Plan. *DeNaples*, 150 A.3d at 1040. Accordingly, City Appellees' argument is without merit. Nonetheless, this Court recognizes that Lumania's arguments pertaining to Trioani's compliance with the *Zoning* Light Requirements are premature.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lumania Properties, L.P.,  :
              Appellant  :
  :
      v.  :
  :
Planning Commission of the  :
City of Pittsburgh, Troiani Group,  :
Troy Development Associates, L.P.,  :
Boulevard & Market, LLC and  :   No. 531 C.D. 2021
City of Pittsburgh  :

O R D E R

AND NOW, this 17th day of May, 2022, the Allegheny County Common Pleas Court's April 14, 2021 order is affirmed.

_____
ANNE E. COVEY, Judge